Robert Miksatka, et al., Plaintiff-Appellee, v. Illinois Northern Railway Company, Defendant-Appellant.

Gen. No. 49,413.

First District, Fourth Division.

May 27, 1964.

Floyd Stuppi, John J. Schmidt and W. J. Swartz, all of Chicago, for appellant.

Joseph L. Goldberg, of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant appeals from an adverse judgment of $25,000 entered on a jury verdict. The cause of action arose out of a collision between plaintiff's automobile and a switch engine owned and operated by the defendant.

The accident occurred at approximately 12:45 a. m. on December 9, 1956, as plaintiff was driving east along 31st Street in Chicago. He had left a company Christmas party at about 11:40 p. m. and due to the inclement weather conditions agreed to drive his coworker, Mrs. Haxel, to her home in the vicinity of the accident. The visibility was poor at the time due to a heavy snowfall, and the street was illuminated only with old-fashioned open-bulb streetlights. As plaintiff was proceeding along 31st Street in his 1941 Studebaker, he approached an intersection with the Illinois Northern's tracks near Homan Avenue. The tracks intersect 31st Street at a diagonal in a northeast to southwest direction and measure almost 127 feet across the street, the width of the street itself being only about 44 feet. There was no watchman on duty at the crossing, nor were there any mechanical warning devices to signal the approach of a train. There was merely a standard cross-buck sign which, according to plaintiff and the police officer who investigated the accident, was covered with snow. Plaintiff further testified that, although he was familiar with the crossing, having worked in the area for many years, he had never crossed the tracks before at night and was unable to see the rails on the night in question as they were covered with a three-inch accumulation of snow.

Plaintiff approached the intersection at a speed of about fifteen miles per hour. He looked to his right, went onto the tracks, and then for the first time looked to his left and was instantly struck by the defendant's engine. He stated that he did not hear a bell or a whistle. On cross-examination he said that he did not even have time to put his foot on the brake.

Following the accident plaintiff was hospitalized for cuts, bruises and a concussion. He returned to work in January of 1957 and in March of that year suffered a stroke.

█ At the close of all the evidence, the defendant moved for a directed verdict in its favor. The trial court denied the motion and it is principally this ruling which the defendant here alleges as error.

The law in Illinois is clear that a verdict must not be directed for the defendant if there is any evidence which when viewed most favorably to the plaintiff proves or tends to prove plaintiff's claim or from which reasonable inferences can be drawn to support his claim. Zide v. Jewel Tea Co., 39 Ill App2d 217, 188 NE2d 383. Defendant urges, however, that even under this rigid standard it was entitled to a directed verdict as a matter of law. Defendant points to Miksatka's own testimony that he did not look to his left until he was on the railroad tracks and maintains that this constitutes contributory negligence as a matter of law.

█ It is undisputed that the Illinois cases impose upon a plaintiff the burden of proving his freedom from contributory negligence, and that this includes proof that he used that degree of care commensurate with the known danger of railroad crossings. Greenwald v. Baltimore & O. R. Co., 332 Ill 627, 164 NE 142; Carrell v. New York Cent. R. Co., 384 Ill 599, 52 NE2d 201. It is also clear that the failure of an automobile driver to look as well as listen for an approaching train upon entering a railroad crossing is evidence of contributory negligence. Tucker v. New York, C. & St. L. R. Co., 12 Ill2d 532, 147 NE2d 376 (1958).

In the Tucker case, supra, the court held at page 536:

It is also true, as plaintiff contends, that there may be facts such as obstructions to view or dis-

260

tractions that might mislead plaintiff, without his fault, or excuse a failure to look and listen. Gills v. New York, Chicago and St. Louis Railroad Co. 342 Ill 455; Chicago and Alton Railroad Co. v. Pearson, 184 Ill 386.

However, in that case the court upheld a directed verdict for defendant based on the specific evidence that plaintiff had a clear, unobstructed view of any approaching train for one-fourth of a mile, and stated:

> From a review of the entire record, we find neither evidence nor any legitimate inference which may legally be drawn therefrom, which would either *excuse plaintiff's failure to look,* or convince a reasonable mind that he looked but did not see the train. (Emphasis added.)

The implication of this statement is clear: plaintiff's failure to look for an oncoming train is not contributory negligence per se, but rather is only strong evidence going to the issue of his due care. As the Supreme Court declared in Chicago & N. W. Ry. Co. v. Dunleavy, 129 Ill 132, 22 NE 15, at page 148:

> Undoubtedly a failure to look or listen, especially where it affirmatively appears that looking or listening might have enabled the party exposed to injury to see the train and thus avoid being injured, is evidence tending to show negligence. But they are not conclusive evidence, so that a charge of negligence can be predicated upon them as a matter of law. There may be various modifying circumstances excusing the party from looking or listening, and that being the case, a mere failure to look or listen cannot, as a legal conclusion, be pronounced negligence per se.

See also, Humbert v. Lowden, 385 Ill 437, 53 NE2d 418; Gillan v. Chicago N. S. & M. Ry. Co., 1 Ill App2d 466, 117 NE2d 833.

Thus, in the case at bar, plaintiff's failure to look in the direction of the approaching train would constitute contributory negligence as a matter of law unless there was evidence tending to show that his view in that direction would have been impaired even if he had looked. We believe that there was evidence in the instant case sufficient to justify the trial court's refusal to direct a verdict for the defendant. Miksatka and policeman Agnello, the investigating officer, both testified that a garage, located at the northwest corner of the intersection of the street and the railroad tracks, obstructed a driver's visibility to the northeast, i. e., in the direction from which the train was approaching. When this testimony is added to other evidence in the record, e. g., the inclement weather conditions, the lack or inadequacy of a headlight on the engine, etc., plaintiff has clearly put forward enough evidence on the issue of his due care to avoid a directed verdict. The weight to be accorded such evidence was clearly for the jury to determine.

■ Defendant further objects to the trial court's exclusion of the testimony of its witness, John Kilcoyne. This witness' testimony was offered to prove that the building which the plaintiff, passenger Haxel and Officer Agnello claimed blocked a driver's view down the tracks to the northeast, was erroneous.

Kilcoyne was introduced as a draftsman employed by the Santa Fe Railroad as an engineer, and as one who was familiar with the use of standard surveying devices. Defendant's attorney, in his offer of proof, stated that Mr. Kilcoyne the summer following the accident had made various sets of measurements with surveying instruments and would testify "exactly where that obstruction (i. e., the building) is and how that obstruction obstructs your view in ideal conditions." Kilcoyne was not to be an opinion or expert witness but was merely to testify as to the sight-line

262

issue raised in the testimony of the plaintiff and his witnesses.

The trial court excluded this evidence on the grounds that such testimony would invade the province of the jury. To do so was in our opinion reversible error. Plaintiff and two of his witnesses testified that the building on his left blocked the view of the tracks to the northeast, i. e., the direction from which the train was approaching. The offer of proof indicated that Kilcoyne's testimony would be for the purpose of rebuttal; that it would deal with measurements taken of the road, the building and the tracks; and that it would concern sight lines and obstructions under ideal conditions and would not go to the question of what was or was not visible by the plaintiff at the time of the occurrence.

It is obvious, therefore, from the offer of proof, that Kilcoyne's testimony would not have been that of an expert offering an opinion on the "ultimate issue" of the case. His testimony, had it been admitted as per the offer of proof, would merely have gone to the jury as tending to rebut the evidence of plaintiff's witnesses that the driver's view was obstructed. Its value for this purpose is not for us to determine. The jury, with all the evidence before it, could weigh Kilcoyne's post-occurrence measurements against the testimony of plaintiff's on-the-spot witnesses, including the policeman, and form its own conclusion as to plaintiff's due care. Indeed, this is the very purpose for which a jury is impaneled.

Kilcoyne's evidence was not offered as an experiment designed to duplicate conditions or re-enact the occurrence but merely to rebut evidence of the position of a permanent obstruction and should have been admitted. In Johnson v. Chicago & N. W. Ry. Co., 9 Ill App2d 340, 132 NE2d 678, at page 356, the court held:

Witnesses have always been permitted to testify with respect to obstructions to view; for example, such things as hedges, fences, buildings and the like at intersections; . . . . The difference here is only that the evidence refers to a later date. Hence, proof was necessary to show (1) that only permanent objects or obstructions were involved and, (2) that there had been no change in the permanent objects . . . which would affect the visibility.

■ Plaintiff argues that even if the subject of Kilcoyne's testimony was found properly admissible, he should still not be permitted to testify since the defendant failed to list him as a witness in answer to a written interrogatory submitted by the plaintiff. Since the trial court recessed the trial overnight to give the plaintiff an opportunity to talk with Kilcoyne prior to his taking the stand, plaintiff cannot claim surprise and the court did not abuse its discretion in this regard. Wright v. Royse, 43 Ill App2d 267, 193 NE2d 340; Hansel v. Friemann, 38 Ill App2d 259, 187 NE2d 97.

For error in refusing to allow Kilcoyne to testify as to his observations and measurements in regard to the claimed obstruction, the judgment of the Circuit Court must be reversed and the cause remanded for a new trial.

Reversed and remanded.

ENGLISH, P. J. and McCORMICK, J., concur.