EDNA M. STEWART, Plaintiff-Appellee, *v.* CURTIS A. HUFF, Defendant-Appellant.

(No. 56283;

First District (4th Division)—September 26, 1973.

Kerry R. Cordis, of Princeville, for appellant.

J. Edward Jones, of Blue Island, for appellee.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

This is an action on a promissory note. The plaintiff filed a complaint and confession of judgment in the Circuit Court of Cook County on August 2, 1965, and on the same date the court entered judgment in her favor in the sum of $29,512.50. The defendant moved to set aside the judgment and for leave to defend the claim on its merits. On October 15, 1965, the court entered an order granting this motion and the defendant filed an answer to the complaint and a counterclaim for $10,000.

After a trial on the merits, which began in December of 1970, the jury returned a verdict in favor of the plaintiff in the amount of $29,512.50 on the original complaint and a verdict in favor of the defendant in the amount of $10,000 on the counterclaim. Each party filed a post-trial motion for judgment notwithstanding the verdict. On May 20, 1971, the court entered judgment on the verdict in favor of the plaintiff for $29,512.50. It also granted her motion for a judgment nothwithstanding the verdict on the counterclaim and entered judgment in her favor and against the defendant. This appeal by the defendant followed.

The sole issue raised by the defendant's brief and oral argument is whether the verdict in favor of the plaintiff is against the manifest weight of the evidence. As we view the case, it will not be necessary for us to reach this question.

The evidence may be summarized as follows. In 1958, the defendant who is an attorney, was employed as general counsel for the First Federal Savings and Loan Association of Chicago. The plaintiff became acquainted with him in June or July of that year and shortly thereafter she discussed with him the possibility of buying as an investment the mortgages on two pieces of property which were then held by First Federal. The properties were located at 7233 Osceola and 1519 Talman, both in the City of Chicago. The defendant told the plaintiff that the mortgages were in default and that he was in a position to obtain them for her. He advised her, however, that before either property went into foreclosure, First Federal would have to give its approval and that before she could buy either mortgage and foreclose herself the sale would have to be approved by First Federal's board of directors. He also advised her of the owner's right to redeem in the event of a foreclosure and that if there was a redemption she would receive her money back plus six per cent.

On November 25, 1958, the plaintiff gave the defendant $10,470.95 for the purpose of obtaining the mortgage on the Osceola property. On June 22, 1959, she gave him $1300 to obtain the mortgage on the other property, bringing the total sum placed with the defendant for investment to $11,770.95.

For reasons which are not pertinent here, the defendant was unable

to obtain the mortgages on either of the properties. However, he did not inform the plaintiff of this, but led her to believe that he had obtained the properties for her. During this period he sent her detailed correspondence including statements of charges for his services rendered in connection with the foreclosures. These set forth specific steps taken and the charges for each and set off sums which represented rents supposedly collected by the defendant on the plaintiff's behalf. This deception continued for a period of approximately six months after which the defendant admitted that he had been unable to obtain the properties and offered to return the plaintiff's money to her plus six per cent interest, a total of $13,035. The plaintiff refused this offer, maintaining that the defendant had guaranteed that he would obtain the properties for her.

In October of 1960, the defendant was contacted by Louis Rieger, an attorney representing the plaintiff. The defendant testified that he. met with Rieger in the latter's office and renewed his offer to return the plaintiff's money plus interest of six per cent. Rieger accepted this offer, but stated that it would not be enough to satisfy the plaintiff and that in addition to the $13,035 the defendant would have to pay $10,000 in cash and sign a note for $24,000. The defendant further testified that Rieger told him that if he did not comply with this demand the plaintiff would complaint to the State's Attorney's office, the directors of First Federal and the bar association. Because of these threats the defendant paid an additional $10,000 and signed the note which is the subject of the present action. The note, which was payable in installments, was signed on October 13, 1960. The defendant made eleven payments of $200 each for a total of $2200.

The theory of the defense at trial was that the consideration for the note was the plaintiff's agreement not to prosecute the defendant and that such a consideration is illegal, rendering the note unenforceable. This was also the theory of the counterclaim by which the defendant sought to recover the $10,000 which he paid to the plaintiff in cash. The jury returned a verdict in favor of the defendant on the counterclaim thus raising the question whether, in light of the evidence set forth above, the court's subsequent granting of a judgment n.o.v. in favor of the plaintiff was proper.

■■ In *Pedrick v. Peoria & Eastern R.R.*, 37 Ill.2d 494, our Supreme Court set forth the now well known standard to be followed by the trial courts of this State in deciding motions for judgment notwithstanding a verdict:

> "In our judgment * * * judgments *n.o.v.* [ought to be] entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so over-

whelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill.2d at 510.)

Applying the *Pedrick* standard to the present case, it is our view that the evidence taken in its aspect most favorable to the defendant does not so overwhelmingly favor the plaintiff that the verdict for the defendant on the counterclaim could never stand. For the jury to have found for the defendant on the counterclaim it must have concluded that the $10,000 was paid because of the threats allegedly made by the plaintiff. There is sufficient evidence in the record to support such a conclusion.

The plaintiff denied threatening the defendant herself, but admitted that Rieger was acting in her behalf and that she left the matter to his discretion. More important, the record clearly establishes that by the time of trial the defendant had paid the plaintiff $13,035, as a return of her investment plus six per cent, an additional $10,000 in cash and $2200 on the note, a total of $25,235. This sum was approximately double the amount which the plaintiff had placed with the defendant for investment only two years earlier. Including principal and interest, there remained unpaid on the note at this time $28,340. Thus had the defendant satisfied the note completely, he would have paid to the plaintiff in all $53,-575 on her original investment of $11,770.95 or a return of approximately five hundred per cent.

■■ We do not deem it necessary or proper to pass on whether the evidence establishes an illegal consideration for the note executed by the defendant. Nor do we deem it proper to speculate upon the plaintiff's actual loss as a result of the defendant's having held her funds improperly for six months. However, we believe that it would strain credulity to hold as did the trial court that the foregoing evidence taken most favorably to the defendant does not establish a basis from which the jurors could have concluded that the defendant was motivated by the plaintiff's threats or those of her attorney. For this reason the trial court erred when it granted the plaintiff's motion for a judgment n.o.v. on the counterclaim. The judgment for the plaintiff on the counterclaim is reversed.

The plaintiff testified that the defendant told her that he would obtain the two buildings for her and that she sold some stock in order to make the investment. She also presented evidence that subsequently the stock split three for one and that her holdings would have increased in value substantially had she not sold them. In addition, it was undisputed that the defendant signed the note upon which the main action was based and made several payments on it. Therefore, we believe that the record sustains the jury's verdict in favor of the plaintiff in the action on the note. In order for the jury to have reached such a verdict it must have concluded that the note was executed as fair compensation for the

plaintiff's losses and was supported by adequate consideration. Thus the verdict in the main action is inconsistent with that rendered in the counterclaim, which, as we have indicated, necessarily must have been predicated upon a finding of illegal consideration. The two verdicts are based upon the same evidence and are clearly contradictory.

■■ The inconsistent verdicts indicate that the jury either was confused as to the issues in the case or disregarded the court's instructions. Under these circumstances the cause must be submitted to another jury. Therefore the judgment in favor of the plaintiff in the action on the note is reversed and both the principal action and the counterclaim are remanded to the Circuit Court of Cook County for a new trial.

In her brief in this court the plaintiff raises numerous arguments, none of which responds directly to the issue raised by the defendant. We have considered the diverse authorities cited by the plaintiff and find them inapposite to a resolution of the case in this court. The plaintiff has also objected to the report of proceedings in the instant case on the ground that this court was without jurisdiction to extend the time for its filing. This objection is without merit. For the foregoing reasons the judgments of the Circuit Court are reversed and the cause is remanded for a new trial.

Reversed and remanded.

ADESKO and DIERINGER, JJ., concur.