ROBERT APPELGREN, Plaintiff and Counterdefendant-Appellant, v. RICHARD WALSH, Defendant and Counterplaintiff-Appellee.

Second District   No. 2—84—0690

Opinion filed September 23, 1985.

Gordon C. Ring, of Ring & Nash, P.C., of Rockford, for appellant.

Donald L. Shriver, of Downey, Yalden, Shriver & Yalden, of Rockford, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff-counterdefendant, Robert Appelgren, appeals from the jury verdicts and judgment entered against him for malicious prosecution, assault and false imprisonment and for the damages awarded him for breach of a lease. Specifically, plaintiff contends that it was error for the court to refuse to allow the testimony of plaintiff's expert witness and to enter judgment on allegedly inconsistent verdicts.

The plaintiff brought this action to recover damages occasioned when defendant-counterplaintiff, Richard Walsh, allegedly converted plaintiff's standing dead timber and breached a farm lease. Defendant counterclaimed to recover damages occasioned by the alleged malicious prosecution and assault of defendant by plaintiff.

The situs of this case is a farm owned by plaintiff and leased to defendant in three-year intervals from 1974 to 1980. Waterways had been installed on the farm between 1974-77 to limit soil erosion. The waterways were installed by Douglas McAllister, an excavator. Pursuant to the terms of the second lease from 1977 to 1980, defendant was to mow and maintain the waterways. According to plaintiff, defendant did not fulfill these duties, and as a result the waterways were in need of repair by the end of 1980. Defendant denied having the duty to cut the waterways and contended that the lease had been altered.

During the last week of August 1980, plaintiff met with defendant to pick up a rent check and explained that he would be going to Sweden for three weeks. Plaintiff stated he also told defendant that he would not be renewing his lease due to failure to mow the waterways

but defendant denied this conversation.

Upon plaintiff's return from Sweden he received a phone call and in response took his shotgun and shells and went to the wooded area of the farm leased by defendant. When he arrived plaintiff heard chain saws operating. He then sent his son, who had accompanied him to the farm, to get the sheriff while he remained behind. They arranged a signal whereby plaintiff would shoot into the air to indicate his location.

Plaintiff then saw three men and one woman cutting down and removing lumber. Loaders and log trucks were also observed at the scene. One of the men was defendant Walsh. The plaintiff put the shotgun to the defendant's head and asked what he was doing. He then lowered the gun and pointed it at Walsh's back while he walked behind him. The plaintiff told the group that the police had been called and that no one could leave. While they were waiting, the plaintiff stated that he held the gun under his arm and pointed to the ground but the defendant claimed that he kept the gun pointed at the group. When the defendant told his son, one of the group, to start up the tractor and take it home, he testified that the plaintiff pointed the gun at the boy's face and told him not to move or he would shoot.

When the police arrived, the plaintiff asked to have the people arrested but the deputy did not do so because he felt the need for further investigation.

The next day, the plaintiff told the sheriff's department that the damage done was in excess of $35,000. Two days later the plaintiff signed a complaint against the defendant alleging theft, attempted theft and criminal damage to property.

Upon further investigation, it was discovered that the 12 trees cut had been dead and that the value of the standing timber was $52.

The defendant was arrested and released on bond. Later, defendant received a letter from the assistant State's Attorney saying that the case against him had been dismissed.

At the time of trial, plaintiff intended to call Douglas McAllister as an expert witness but discovered three days before trial that McAllister had disappeared. A continuance was granted and the case was reset for February 27, 1984. After the jury was excused the first day, plaintiff's counsel informed the court and defendant's counsel that he would be attempting to obtain an expert witness not previously disclosed who would testify in the same fashion as McAllister. The trial court ruled, however, that the witness would not be allowed to testify before the jury. Plaintiff presented an offer of proof from the witness. Thereafter, the case proceeded to verdict and judgment.

Count I of the complaint claimed damages for breach of the lease alleging defendant had a duty to mow and maintain the waterways. The jury returned a verdict for the plaintiff and found damage in the amount of $200. Count II of the complaint claimed defendant Walsh converted plaintiff Appelgren's trees. The jury found for the plaintiff and awarded damages of $52. Count III claimed damages from the defendant for trespass. The jury found for the plaintiff but awarded no damages.

The counterclaim was in three counts. Count I claimed damages for malicious prosecution because plaintiff instituted a criminal action against the defendant. The jury found for the defendant and awarded damages of $1,200 and $1,500 punitive damages. Count II claimed damages for assault when plaintiff Appelgren pointed the shotgun at defendant Walsh. The jury found for the defendant and awarded $1,500 damages and $10,000 punitive damages. Count III claimed damages for false imprisonment when plaintiff made Walsh wait for the arrival of the police. The jury found for the defendant, but awarded no damages.

■ The plaintiff raises two issues in this appeal: (1) whether the trial court abused its discretion in denying plaintiff the testimony of an expert witness who had not previously been disclosed to the opposing party, and (2) whether the verdicts and judgments entered for defendant-counterplaintiff on counts for malicious prosecution and assault are inconsistent with the verdict and judgment entered for plaintiff-counterdefendant on a count for tortious conversion.

The decision to allow or exclude expert testimony is a matter within the sound discretion of the trial court. (*Estate of Whittington v. Emdeko National Housewares, Inc.* (1981), 96 Ill. App. 3d 1007; *Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678.) One factor to be considered by the trial court in determining whether an expert witness should be allowed to testify is compliance with the mandate in section 2—1003(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1003(c)), which provides:

"(c) A party shall not be required to furnish the names or addresses of his or her witnesses, except that upon motion of any party disclosure of the identity of expert witnesses shall be made to all parties and the court in sufficient time in advance of trial so as to insure a fair and equitable preparation of the case by all parties."

Plaintiff's contention on appeal is that the trial court should have allowed his expert witness to testify despite the fact that the court and opposing counsel were first informed of the expert after the first day

of trial. Although the purpose of the above rule is to give an opposing party an opportunity to take discovery from that party's experts (*Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1), and to insure that the parties have an opportunity to fairly and equitably prepare their case in advance of trial (*Smith v. St. Therese Hospital* (1982), 106 Ill. App. 3d 268), plaintiff claims that under the particular circumstances of this case defendant would not have been unfairly prejudiced.

Plaintiff relies on *Plost v. Louis A. Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253. In that case, the court found that an order limiting witnesses was improper because new witnesses might be found during trial and could be used by giving the opposition an opportunity to depose a witness before he was called to testify, if doing so did not interfere with the trial. The *Plost* court also stated that the deposing could occur even after the trial had commenced. 62 Ill. App. 3d 253, 259.

In the recent case of *Ashford v. Ziemann* (1984), 99 Ill. 2d 353, our supreme court reviewed the factors which a trial court should consider when making that determination. These include surprise to the adverse party, the prejudicial effect of the testimony, the nature of the testimony, the diligence of the adverse party, the timely objection to the testimony and the good faith of the party calling the witness. 99 Ill. 2d 353, 369.

The sanction was not imposed in cases where there was no surprise, or the surprise was minimal, or where the surprise and the harm caused by it were alleviated by giving the adverse party an opportunity to talk to the witness prior to his testifying, or where the witness' testimony was merely cumulative and corroborative. *Rosales v. Marquez* (1965), 55 Ill. App. 2d 203; *Miksatka v. Illinois Northern Ry. Co.* (1964), 49 Ill. App. 2d 258.

In the present case there is no doubt that defendant was surprised by the new expert witness. Although the defendant indicates that he was prejudiced in this regard, plaintiff points out that the offer of proof given by the new expert was not materially different from the deposition of the original expert McAllister, therefore defendant would not have been surprised at the nature of the testimony and would have been adequately prepared to cross-examine the witness. In response to this argument, defendant notes that the deposition in question was not presented to the trial judge for consideration and, because of that omission, defendant made a timely objection to the use of the testimony. Therefore, no just comparison of the offer of proof and the deposition transcript can be made on appeal to this court. Defense

counsel also argued to the court that had he known of the additional expert witness his examination of all of the witnesses thus far in the trial might have been different, including Mr. Carlson, plaintiff's present tenant, who provided the crucial testimony as to the condition of the farm in 1980. Defense counsel also indicated that he had deposed the original expert, reviewed his testimony and had obtained other witnesses and evidence regarding that expert's comments. He claimed that the new expert's testimony might have differed and that this fact would render the defense unprepared.

Although plaintiff's counsel stated to the court that he did not obtain anyone else because he had no idea McAllister was going to disappear, the record indicates that plaintiff told defense counsel a month and a half before trial that his expert witness was not available. Plaintiff had sought a continuance when he discovered McAllister's absence, and the court allowed a five-week continuance. Though plaintiff argues that it was Mr. Carlson's "surprise" testimony regarding the condition of the farm in 1980 which opened the door allowing him to present expert testimony, defendant's argument is well taken that other witnesses could have been sought to testify to this fact. Defendant made a timely objection to the use of the testimony. Plaintiff contends that there would have been ample time for defendant to depose the new witness. Though this may have been true, it would not cure the fact that other witnesses had already testified before the defendant had knowledge of the expert's testimony. Because of the nature of the testimony and its relation to damages, defendant's trial strategy might have been significantly affected.

The discretion given to the trial court in this area is broad and will not be interfered with unless it appears that it has been abused (*Rosales v. Marquez* (1965), 55 Ill. App. 2d 203, 209). The record indicated that the trial court carefully considered its decision and concluded that it was not fair to defendant to present an expert witness on the second day of trial. Considering all of the circumstances, including the three years' time which had been previously imposed on plaintiff during this time for failure to respond to discovery, it is our opinion that the trial court's action was not an abuse of discretion.

■ The plaintiff next argues that the verdicts and judgments entered for defendant-counterplaintiff on counts for malicious prosecution and assault are inconsistent with the verdict and judgment entered for plaintiff-counterdefendant on a count for tortious conversion.

Plaintiff asserts that the jury's finding that defendant had converted plaintiff's standing timber was inconsistent with its finding for

defendant that plaintiff maliciously prosecuted defendant. He bases his contention on the fact that in order to find for defendant on the malicious prosecution count, the jury had to conclude that plaintiff had no probable cause to commence a criminal proceeding against defendant. Since the facts of the conversion provided ample probable cause, plaintiff claims inconsistency.

Plaintiff relies on *Stewart v. Huff* (1973), 14 Ill. App. 3d 782, for the proposition that two inconsistent verdicts based on the same evidence cannot stand. In that case, the jury found a certain note to constitute adequate consideration on the primary claim and illegal consideration on the counterclaim, a clearly inconsistent conclusion based on the same evidence.

In *Scott v. Fite* (1972), 7 Ill. App. 3d 672, also cited by plaintiff, the court refers to its decision in *Martin v. McCarry* (1971), 2 Ill. App. 3d 650, where the court held that the same jury considering a single set of facts cannot reach two different conclusions in their verdicts unless the opposite and inconsistent conclusions are reconcilable under applicable rules of law and there is a rational basis for holding that the verdicts are not adverse. 2 Ill. App. 3d 650, 653-54.

Our review of the record indicates that in the present case there was a rational basis for the two verdicts and they were not inconsistent. The jury was instructed that they could find for the plaintiff on any or all of the counts of his complaint as well as for the defendant on any or all of the counts in his counterclaim. Since the jury found in favor of plaintiff on count II (conversion), it necessarily found first, that the plaintiff owned real property and, second, that defendant wilfully, intentionally and without the knowledge or the permission of the plaintiff removed from the plaintiff's property, trees or wood to which the defendant was not entitled to possession, and converted said trees or wood to the defendant's own personal use and to the damage of plaintiff, as stated in the jury's instruction.

The finding of malicious prosecution indicated that per instruction, the jury found that:

First, the plaintiff, Robert Appelgren, commenced an original criminal proceeding against the defendant;

Second, this original proceeding terminated in favor of the defendant;

Third, the plaintiff commenced this criminal proceeding without probable cause;

Fourth, the plaintiff commenced said criminal proceeding with malice;

Fifth, that the wrongful conduct of the plaintiff was the proxi-

mate cause of the injuries to the defendant.

It is particularly noteworthy that, although the jury found that defendant had converted plaintiff's trees, it awarded only $52 in damages. Further evidence showed that the original criminal proceeding initiated by plaintiff against the defendant had alleged the theft, and attempted theft of mature oak trees having a value exceeding $150, a felony. It also contained a count alleging criminal damage to property exceeding $150 for damage to mature oak trees, an excavated waterway and vegetation, also a felony. The testimony and evidence at trial indicated that after further investigation and the discovery that the "mature trees" at issue were actually dead trees, that their only value was approximately $52 and that only minor damage to the waterways was observed, the State's Attorney voluntarily dismissed the charges. Therefore, it was not irrational or inconsistent for the jury to conclude that the minor value of the converted trees and the actual damage observed to the waterways did not furnish probable cause for plaintiff to commence a criminal proceeding and was indicative of malice because of the excessive damage alleged. Furthermore, as defendant argues, tortious conversion does not necessarily embrace all the same elements as criminal theft. For example, relief in an action for conversion may be had without establishing malice, culpability or conscious wrongdoing. (*Douglass v. Wones* (1983), 120 Ill. App. 3d 36, 41.) Therefore, we conclude that there was no inconsistency in the jury's verdicts for conversion and malicious prosecution warranting reversal or a new trial.

We reach a similar conclusion regarding plaintiff's claim that the verdicts for assault and conversion were inconsistent. Although plaintiff argues that his placing of the gun to defendant's head and back and firing the gun several times in the air was legal force applied in defense of his personal property, we do not believe that the circumstances of the occurrence in the present case justified the use of the threatened force exhibited by plaintiff. See *Spelina v. Sporry* (1935), 279 Ill. App. 376.

Furthermore, as defendant correctly states, plaintiff neither raised an affirmative defense of lawful authority nor sought any supplementary instruction on this element. Therefore, we conclude that plaintiff's claim of inconsistent verdicts is without merit.

For the reasons stated, the judgments of the circuit court of Winnebago County are affirmed.

Affirmed.

SCHNAKE and STROUSE, JJ., concur.