THE NATIONAL BANK OF MONTICELLO*, Ex'r of the Estate of Eugene Loren Bloomingdale, Plaintiff-Appellee, v. DWIGHT H. DOSS, Defendant-Appellant.

Fourth District    Nos. 4—85—0068, 4—85—0271 cons.

Opinion filed March 19, 1986.

---

*The National Bank of Monticello was substituted for plaintiff-appellee Jacqueline Morris while the case was pending on appeal.

Michael I. Campbell and Jeff Justice, both of Hull, Campbell & Robinson, of Decatur, for appellant.

Harlan Heller, Ltd., of Mattoon, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

Defendant Dwight Doss appeals the jury awards of $500,000 compensatory and $6,000,000 punitive damages to plaintiff Jacqueline Morris, as guardian of the estate of Eugene Bloomingdale. We affirm the finding of liability and the compensatory damage award. We modify the punitive damage award.

As the facts are not contested, they will be set forth to provide sufficient understanding of the case. Defendant is an attorney in Illinois. Plaintiff was appointed guardian of Eugene Bloomingdale prior to the filing of this action. Bloomingdale is a person of limited mental capabilities. He was described as somewhat retarded and dull-normal intellectually. Tests performed placed him in the lower 20% of people his age.

Bloomingdale requested that defendant aid Bloomingdale's aunt, Lavinia Patient, in preparing her will. Mrs. Patient died a short time after executing the will. Bloomingdale was to be executor and sole heir. Defendant was hired to probate the will. Mrs. Patient left an 80-acre farm, a house, and approximately $25,000. Defendant had been employed by Bloomingdale in other matters before.

At issue is the sale of the 80-acre farm by Bloomingdale to defendant. The written agreement of the sale showed the purchase price to be $188,000. Other records show the price to be $88,000. Defendant paid $500 down and took title and possession. Defendant took the land and sold it in three different parcels to different people. Plaintiff claims defendant took advantage of Bloomingdale's mental capabilities and their attorney-client relationship in purchasing the farm and later reselling at a great profit.

The contract for sale and other documents related to the sale of the property were signed by Bloomingdale and his wife. They admitted the authenticity of the signatures, but denied they understood the effect of the documents they were signing. Plaintiff presented attorneys who testified that the manner in which defendant handled the sale was irregular and improper.

Defendant claimed Bloomingdale was well aware of the transfers. He presented witnesses who stated that Bloomingdale had spoken to them, telling of the sale of the farm to defendant. Defendant also claimed that the statute of limitations had run against Bloomingdale and his guardian to act as a bar to this action.

The case went to the jury on negligence and breach-of-a-fiduciary-duty issues. Special interrogatories were also submitted on the statute-of-limitations question. The jury returned a verdict for plaintiff on all issues. The jury awarded $500,000 compensatory and $6,000,000

punitive damages. Defendant's post-trial motions and motion for a new trial were denied. He brings this appeal.

We first examine defendant's first claim that the trial court erred in not granting his request for a change of venue. The complaint in this case was filed in March, 1980. The petition for a change of venue was filed April 4, 1984. The substance of the petition alleged that defendant had received an enormous amount of adverse pretrial publicity "in Macon County, Illinois for the past three years [and] that he [did] not believe he could receive a fair and impartial trial." The petition was not supported by affidavits.

The pertinent provision is section 2—1001 of the Code of Civil Procedure. In cases where the grounds for a change-of-venue petition are due to the prejudice of the inhabitants of the county, the petition shall state the facts upon which the petitioner bases his belief. Affidavits of two other reputable persons residing in the county supporting the motion must be attached. Ill. Rev. Stat. 1983, ch. 110, par. 2—1001(2)(d).

Under this section, the right to a change of venue is not absolute, and the trial judge's exercise of discretion whether to grant or deny the petition will only be disturbed upon a showing of an abuse of discretion. (*Jensen v. Curry* (1977), 46 Ill. App. 3d 155, 360 N.E.2d 975.) We find no abuse to have occurred in the instant case. Defendant failed to attach affidavits to his petition. This has been found to be fatal to such petitions. *Concerned Citizens for McHenry, Inc. v. City of McHenry* (1979), 76 Ill. App. 3d 798, 395 N.E.2d 994.

Plaintiff additionally argues that the petition was not made before the trial judge had ruled on any substantial issue in accordance with section 2—1001(2)(c). Defendant's two motions to dismiss and for summary judgment had been denied prior to the filing of the petition. Defendant points to the fact that Bloomingdale had spoken with Harry Reasoner of the CBS television program 60 Minutes as indicative of the pretrial publicity. However, this conversation occurred more than 4½ years before the petition was filed. We agree with plaintiff that under these facts, defendant's petition for a change of venue was untimely and properly denied. *City of Peoria v. Peoria Rental, Inc.* (1978), 61 Ill. App. 3d 1, 377 N.E.2d 546.

We next examine whether the jury's answers to the special interrogatories were against the manifest weight of the evidence. This, was the basis for defendant's motion for judgment notwithstanding the verdict. The questions pertained to the issue of whether Bloomingdale knew of defendant's breach of fiduciary duty or negligence before the statute of limitations had run. Both parties agree

that the five-year limitations period and the discovery rule apply.

The discovery rule was defined by the supreme court in *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.

"At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences. *** [T]his is usually a question of fact ***." 88 Ill. 2d 407, 416, 430 N.E.2d 976.

The following questions were put to the jury:

"*First* Did Eugene Bloomingdale know prior to March 18, 1975, of all breaches of fiduciary duty on the part of Dwight Doss?

*Second* Did Eugene Bloomingdale know, or in the exercise of reasonable care, should he have known prior to March 18, 1975, of any claimed negligence by Dwight Doss?"

The jury answered both in the negative.

There was conflicting evidence on this issue. Bloomingdale and his wife testified that they were unaware of the transfer in title of the farm until a short while before the complaint was filed. Defendant presented six witnesses who stated that in 1974, Bloomingdale had told them he had sold the farm to defendant. Defendant contends that the witnesses' testimony shows the jury's decision to be erroneous, requiring the entry of the requested judgment *n.o.v.*

"[J]udgments *N.O.V.* [ought to be] entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

A review of the record shows that the denial of the motion for judgment *n.o.v.* was proper. We also do not believe the verdict to be against the manifest weight of the evidence. There was evidence presented to the jury, which if believed, would support the findings in the special interrogatories. *Lockett v. Bi-State Transit Authority* (1983), 94 Ill. 2d 66, 445 N.E.2d 310.

■ Defendant next contends that the trial court erred in denying his motion for a new trial based on newly discovered evidence. The motion was accompanied with affidavits of Carl Smith and Larry McClure. McClure, Bloomingdale's employer during 1974-75, testified at the hearing on the motion. He stated that during that time Bloomingdale had told him that the farm had been sold to defendant.

However, McClure was impeached by a prior statement in which he stated that he did not recall to whom Bloomingdale said he sold the farm.

The trial judge found that defendant had failed to exercise due diligence in regard to the discovery of this evidence. He also found that the evidence was merely cumulative to that previously presented. Finally, the court found the evidence would not have altered the result of the trial. Thus, the motion was denied.

Defendant's motion was brought under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401). These motions are addressed to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. (*In re Marriage of Emerson* (1983), 115 Ill. App. 3d 712, 450 N.E.2d 987.) The newly discovered evidence must be (1) so conclusive that it probably would change the result if a new trial is granted, (2) discovered since the trial, (3) such that it could not have been discovered before the trial in the exercise of due diligence, (4) material to the issue, and (5) not merely cumulative to the trial evidence. *Tuttle v. Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 462 N.E.2d 645.

■ We agree with the trial judge's findings that defendant failed to exercise due diligence in discovering the evidence. The testimony at the hearing showed that defendant's counsel had deposed Bloomingdale, and that Bloomingdale had stated that he regularly left work for a short while to go to defendant's office. The court found that this would require further inquiry on the part of defense counsel. Also, given the nature of the newly discovered testimony, we agree that it was merely cumulative and that it probably would not change the outcome of a new trial. As such, denial of defendant's motion based on newly discovered evidence was not an abuse of discretion.

■ Defendant also challenges the trial court's allowance of the testimony of plaintiff's economic expert. Professor A. James Himes of the University of Illinois testified to the amount of damages suffered by Bloomingdale. Plaintiff raises the issue of waiver in that defendant's objection did not properly preserve the issue. Defendant contends that Dr. Himes' testimony was rendered incompetent due to his failure to consider the tax consequences in his calculations. The trial court ruled that the witness was competent to testify and allowed his testimony.

Dr. Himes calculated the damages in the following manner. He first took the present value of the payments received by defendant for the sale of the farm determined by assuming the payments had been immediately invested upon receipt in six-month treasury bills and con-

tinually rolled over. The present value of payments received by Bloomingdale was also calculated in the identical manner. At the time of trial, the present values received by defendant and Bloomingdale were $754,736 and $201,571 respectively. From this, the difference, alleged to be the damages, was $553,165.

Defendant's objection was that the witness did not consider proper factors in determining the amount of damages. Plaintiff states that the objection was based on an alleged failure to lay a proper foundation. While the word "foundation" was used, defendant vigorously cross-examined the witness on the criteria used and argued to the trial court that the witness' testimony was incompetent. It is clear that defendant was complaining, as he is now, about the underlying foundation of the testimony, not the evidentiary foundation. Thus, the claim of waiver fails.

■ We still, however, approve of the admission of the evidence. The admission of expert testimony is within the discretion of the trial judge. (*Applegren v. Walsh* (1985), 136 Ill. App. 3d 700, 483 N.E.2d 686.) Dr. Himes testified to his credentials as an economist. They were sufficient to qualify him as an expert. The basis for his opinion does not affect his standing as an expert. Such matters go only to the weight of the evidence, not the sufficiency.

The supreme court in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, adopted Federal Rules of Evidence 703 and 705. Rule 705 states that an expert may testify in terms of an opinion without disclosing the underlying data. Rule 703 states that the data supporting the expert's opinion can be that known to the expert prior to trial. Also, if the information is that reasonably relied upon by similar experts, the data need not be admissible. Dr. Himes' calculations were based on the figures in evidence and the Treasury bill rates, commonly used by economists.

His failure to consider the tax consequences in calculating his figures is one of the facts underlying the basis of the expert opinion. "[T]he burden is placed upon the adverse party during cross-examination to elicit the facts underlying the expert opinion." (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 194, 417 N.E.2d 1322.) "The principal safeguard against errant expert testimony is cross-examination." *Sears v. Rutishauser* (1984), 102 Ill. 2d 402, 407, 466 N.E.2d 210.

Defendant was able to cross-examine Dr. Himes to reveal any deficiency in his testimony. Defendant pursued the failure to calculate the effect of taxes on the figures. He failed to further pursue the matter as to expenses that would further reduce the damage figure. The alleged weaknesses went only to the weight of the evidence, not its

sufficiency. (We note that the jury did not entirely accept the testimony. The calculation was $553,165. The award was $500,000, a difference of over $53,000.) The trial court did not err in allowing the testimony of Dr. Himes.

■■ Defendant's final challenge is to the jury's award of $6,000,000 in punitive damages. Defendant claims either that punitive damages were improper or that the award was excessive. While we find punitive damages to be proper in this case, we find the award to be excessive.

The present case involves a breach of fiduciary duty. Such cases are appropriate for awards of punitive damages. (*Allabastro v. Cummins* (1980), 90 Ill. App. 3d 394, 413 N.E.2d 86.) Punitive damages are to be awarded where the wrongful act is accompanied by willfulness and wantonness. The goal is to punish the wrongdoer and deter the defendant and others from committing similar acts in the future. (*Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 381 N.E.2d 821.) An award of punitive damages in this case was most proper.

■■ ■■ An award of punitive damages is a matter within the discretion of the jury. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 419 N.E.2d 578.) The award will be reduced only when it is clearly excessive. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) The amount does not have to bear a proportional relationship to the amount of compensatory damages. (*Moore v. Remington Arms Co.* (1981), 100 Ill. App. 3d 1102, 427 N.E.2d 608.) There are no clear guidelines as to when an award of punitive damages is excessive. *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1109.

■■ This court in *Hazelwood* determined three factors should be considered in determining whether an award of punitive damages is excessive. The first factor is the nature and enormity of the wrong. The egregiousness of the act should be reflected in the amount of the award. The second factor is the financial status of the defendant. "Simply stated, the amount of the award should send a message loud enough to be heard but not so loud as to deafen the listener. A deafening award is excessive." (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 713, 450 N.E.2d 1109.) The third factor is the potential liability for the same or similar wrongs. 114 Ill. App. 3d 703, 712-14, 450 N.E.2d 1109.

■■ The third factor is inapplicable to the present case. However, the other two factors bear a great deal in our analysis. The conduct of defendant in this case was reprehensible. The trial judge thought the jury was sending a message to attorneys throughout the State not to

act in this manner. Defendant's breaches of duty and trust placed in him by a mentally slow person supports the jury's making the award substantial.

The financial status of the defendant is the last consideration. Defendant presented evidence as to his net worth. At no time did his net worth exceed $3 million. The greatest amount was $2,938,500. The latest figure was $2,785,000. The award of punitive damages was more than twice defendant's net worth. This amounts to overkill and is the obvious result of passion and prejudice. We do not intend to minimize the seriousness of defendant's wrongdoing, but bankrupting him serves no real purpose and tends to smother the "message" which the jury obviously intended to send. It's not necessary to destroy the errant pupil to teach the entire class a lesson. For this reason, we reduce the amount of punitive damages to the sum of $2,000,000.

Therefore, the judgment of the circuit court of Macon County is hereby affirmed as modified.

Affirmed as modified.

HEIPLE and BARRY, JJ., concur.