F. L. WALZ, INC., Plaintiff-Appellee, v. HOBART CORPORATION, Defendant-Appellant.

Third District   No. 3—86—0504

Opinion filed July 7, 1987.—Rehearing denied August 12, 1987.

Timothy L. Bertschy, of Heyl, Royster, Voelker & Allen, of Peoria (William H. Wallace, of counsel), for appellant.

James E. Konsky and Stephen A. Kouri, both of Vonachen, Cation, Lawless, Trager & Slevin, of Peoria (John A. Slevin, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This action was brought by plaintiff-appellee, F. L. Walz, Inc. (Walz), to recover damages from Hobart Corporation (Hobart) for alleged breach of contract and interference with contractual and prospective contractual relations.

The jury returned a general verdict in favor of Walz and awarded Walz $55,000 as compensatory and $195,000 as punitive damages. The trial court thereupon entered judgment against Hobart.

Walz was a successful franchise agency of Hobart in Peoria from 1966 to 1980, when the agency was terminated. The termination was not sought by Hobart for cause. Instead, it was Hobart's intention to purchase from Walz the entire business, but Walz was unwilling to sell. As an agent for Hobart, Walz earned commissions on the sale of Hobart equipment, earned a mark-up profit on the sale of repair parts, earned income through maintenance contracts, and earned regular hourly rates for repair or warranty work.

Walz also carried other lines of retail equipment and represented other manufacturers. In 1978, Walz began to sell and service industrial equipment. Walz' sales of industrial equipment grew from $12,009 in 1978 to over $207,988 in 1980, whereas Walz' commissions from sales of Hobart retail equipment dropped from $74,543 in 1978 to $9,842 in 1980.

As a result of negotiations between Hobart and Walz, a contract was entered into in July 1980. By its terms Hobart agreed to purchase certain inventory and equipment from Walz for $150,000. Most importantly, however, was section 9 of the agreement, which stated:

> "(9) Sale of Repair Parts. Hobart shall treat Walz, and F. L. Walz, Inc. subsequent to July 31, 1980, as it does all other potential and actual customers of Hobart's repair parts. Hobart will not discriminate against Walz and F. L. Walz, Inc. in the sale of repair parts and will deal with Walz and F. L. Walz, Inc. in accordance with its customary practices as it would any other customer. In addition, Hobart will not make any effort to discourage other Hobart branches or agencies to deal with Walz or F. L. Walz, Inc. in a fashion inconsistent with their custom-

ary practice and procedure."

Subsequent to July 31, 1980, Walz and Hobart's newly formed Peoria branch were competitors. As was contemplated by the parties, it was necessary for Walz to purchase repair parts from Hobart in order to service Walz' customers with Hobart equipment. Although Walz kept a small inventory of parts after termination, it sold the majority of its inventory back to Hobart.

In 1980 and early 1981 Walz placed a number of orders for Hobart parts with the Peoria branch which were not filled immediately, even though the branch's inventory control cards indicated that the needed parts were in stock. The parties differed as to the reasons for the delays. Hobart maintained that the delays were caused by the branch's system of filling orders. Walz, however, asserted that Hobart began an intentional scheme to delay, hinder and prevent Walz from promptly obtaining repair parts.

■ The jury determined that Hobart's delay in filling orders was intentional and awarded Walz damages. Hobart asks this court to reverse the jury verdict because it claims that the verdict was unsupported by the evidence. "We are aware of the oft-repeated rule that a jury verdict is to be given great weight; nevertheless, when a jury verdict is returned which is not supported by the evidence, it is the duty of *** the reviewing court to act as a check upon the jury and reverse that verdict." (*Gullberg v. Blue* (1980), 85 Ill. App. 3d 389, 392, 406 N.E.2d 927, 930.) Therefore, on appeal the court will examine the record to determine a basis upon which the verdict can be supported. (*Slowik v. Schrack* (1979), 77 Ill. App. 3d 42, 395 N.E.2d 753.) We believe there is ample evidence in the record to support the jury verdict in favor of Walz.

Jim Jennings, a parts coordinator for Hobart's branch in Peoria, testified that he was told by Hobart's branch manager and branch service manager to hold back parts ordered by Walz for a week or two weeks. Further, that if Walz personally called and asked if the parts had arrived he "was suppose to tell them no, not yet." Louise Nehl, a receptionist for Hobart's Peoria branch, testified that Walz was treated differently than other customers in that they did not get their parts in the same time frame as other customers. Moreover, through the testimony of Joanne Faulkenthal, Hobart's office coordinator, it was established that the control records showed that many times these parts were in stock when ordered by Walz.

The most telling story involves repair parts ordered by Walz from a Hobart agent in Appleton, Wisconsin. The order was mistakenly delivered by UPS to the Hobart Peoria branch on October 20, 1980. The

parts; however, were not transferred to Walz until December 3, 1980. The parties differ as to the reasons for the delay. Hobart maintains that its policy was to discourage sales outside of an agent's or branch's territory. Therefore, when Don Walker, the branch manager, received the shipment he delayed transferring the shipment to Walz to report receipt of the shipment to his supervisor, Duane Frank. Frank testified that he ordered Walker to hold the shipment until he could determine why the Appleton agency was shipping parts outside of its territory. Unfortunately, however, Frank forgot to tell Walker that the investigation was completed and Walker continued to hold the box.

Walz' account of the events is quite different than that of Hobart. Walz asserts that upon arrival of the box, Walker removed the packing slip and called Duane Frank. Frank told Walker to put the parts in a safe place and he would check into it. Walker first put the box of parts in his office and then in the trunk of his car. The parts remained in the trunk of Walker's car for three weeks. Walker then took the box out of his trunk and put it in his garage for two more weeks. Eventually, the box came into possession of Frank. Frank admitted that he told Walker not to tell Walz that Hobart had the parts.

During this time, Walz was attempting to locate the parts. Walz finally found out that Hobart had the parts from the Appleton agent. Louise Nehl testified that she was instructed to tell anyone who asked about the parts that she had no knowledge where they were, even though she witnessed the box being placed into Walker's trunk. Nehl also told Walker and Frank about a call from Walz concerning the parts, and Frank responded that he would take care of it.

Finally, Walz asked the Peoria police department to inquire into the whereabouts of the parts. Officer Eackle testified that he spoke with Duane Frank, who told him that he did not know where the parts were. Officer Eackle's testimony was confirmed by Walker. Frank informed Officer Eackle, however, that he would check the warehouse for the parts. Later that day, Officer Eackle was informed by the dispatcher that Hobart had located the missing parts and that they could be picked up.

Based on the foregoing evidence and other evidence in the record, we believe that a jury could reasonably render a verdict in favor of Walz and this court will not disturb such verdict where it is amply supported by the evidence of record.

As stated in oral argument, the major purpose of this appeal concerns the amount of damages awarded Walz. Hobart basically alleges that the study upon which Walz premised its damage claim was

flawed and thus any damage figure submitted by Walz would be in error.

Initially, we note that the reviewing court has a duty to act as a check on the jury and reverse an award of damages when it appears that the amount of the verdict bears no reasonable relationship to the loss suffered by plaintiff. (*Greco v. Coleman* (1985), 138 Ill. App. 3d 317, 485 N.E.2d 1118; *Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 412 N.E.2d 1037.) However, it is not necessary that plaintiff prove its lost profits with absolute certainty but only that the prospective profits be approximated by competent proof. *P. A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1984), 130 Ill. App. 3d 987, 474 N.E.2d 1256, *rev'd on other grounds* (1986), 112 Ill. 2d 196, 492 N.E.2d 1288.

In the present case, Walz introduced as evidence of damages the testimony and study of Dennis Ewald, a certified public accountant. Ewald's study was submitted as plaintiff's exhibits 33 through 36 and 33A through 36A. Exhibits 33 through 36, however, were changed and are the same as exhibits 33A through 36A.

Plaintiff's exhibit 33A is titled "Computation of Sales of Food Handling Equipment, Parts and Service, Five Year Period Ended November 30, 1980." It spans the fiscal years ending 1976-80. The year 1976, however, was not used as a part of the study and was not taken into consideration. Line 1 of exhibit 33A lists "sales of food handling equipment parts and service, excluding sales of new Hobart equipment." Line 2 lists "sales of new Hobart equipment upon which commissions were received." For each year, the study then added the figure attained under line 1 and line 2, reaching the following total sales amounts: 1977, $864,153; 1978, $1,178,504; 1979, $921,056; and 1980, $725,755.

Plaintiff's exhibit 34A takes the sales figures computed in exhibit 33A and computes the average sales for the years 1977-80. The average sales equals $922,367.

Exhibit 35A is a computation of a gross profit percentage on sales of food handling equipment, parts and service, excluding the sales of new Hobart equipment. It reads as follows in relevant part:

|  | Year Ended November 30 | | | |
|  | 1977 | 1978 | 1979 | 1980 |
|---|---|---|---|---|
| 1. Sales of food handling equipment, parts and service, excluding new Hobart equipment. | $420,903 | $764,376 | $631,980 | $567,192 |

| | 2. Cost of goods and direct variable expenses | $312,236 | $560,941 | $473,860 | $460,177 |
|---|---|---|---|---|---|
| 3. | Gross profit, before deduction for indirect variable expenses | $108,667 | $203,435 | $158,120 | $107,015 |
| 4. | Gross profit, before deduction for indirect variable expenses, as a percentage of sales | 25.8% | 26.6% | 25.0% | 18.9% |
| 5. | Average of line 4 | | | 25% | |
| 6. | Less indirect variable expenses as a percentage of sales | | | 7% | |
| 7. | Gross profit as a percentage of sales | | | 18% | |

In exhibit 36A, plaintiff used the average sales figure from exhibit 34A and the average gross profit derived from exhibit 35A to compute damages based on a comparison of actual sales with expected sales, as adjusted for the increased cost of Hobart parts. Exhibit 36A reads as follows:

| | | For Months Ended November 30 | | | |
|---|---|---|---|---|---|
| | | 1980 | 1981 | 1982 | 1983 |
| 1. | Average sales | $307,455* | $922,367 | $922,367 | $922,367 |
| 2. | Expected retention percentage | 90% | 80% | 70% | 60% |
| 3. | Expected sales | $276,709 | $737,894 | $645,657 | $533,420 |
| 4. | Actual sales | $211,645 | $241,033 | $158,303 | $105,561 |
| 5. | Lost sales | $ 65,064 | $496,861 | $487,354 | $447,859 |
| 6. | Gross profit percentage | 18% | 18% | 18% | 18% |
| 7. | Damages, before adjustment for increased cost expected on Hobart parts | $ 11,711 | $ 89,435 | $ 87,724 | $ 80,615 |
| 8. | Adjustment for increased cost expected on Hobart parts | $16,459 | $ 43,891 | $ 38,405 | $ 32,918 |
| 9. | Damages | $ (4,748) | $ 45,544 | $ 49,319 | $ 47,697 |

*Prorated for 4 months; $922,367 × 4/12 = $307,455

Line 2 of exhibit 36A, the expected retention percentages, were subjective figures submitted by Tom Walz. The percentages were apparently based on his experience in the field. Moreover, there was some dispute at oral argument as to whether line 4 represents the actual sales and services of just Hobart parts and equipment or includes the sale of other brands of equipment as well. Regardless, we are of the opinion that the damage figures reached on line 9 of exhibit 36A are not an accurate reflection of the loss suffered by Walz. Our basis for this opinion is that line 1 of exhibit 36A reflects the average total of Walz sales from 1977 to November 30, 1980. These sales include not only sales of other brands of equipment, but also the sales of new Hobart equipment. Walz then used that average sales figure, which was computed in exhibit 34A, as a base figure on line 1 of exhibit 36A from which damage calculations were computed for the years of November 30, 1980, to 1983. The error occurs because in 1980 Walz lost the right, through the termination agreement, to sell new Hobart equipment. Therefore, any damage sustained by Walz and caused by Hobart after July 31, 1980, cannot be for the lost sale of new Hobart equipment and, accordingly, the prior sales of new Hobart equipment should not be considered when computing damages for lost sales after July 31, 1980.The average sales figure attained in exhibit 34A included the sales of new Hobart equipment and, therefore, was an inflated figure upon which to base damages in exhibit 36A.

Thus, assuming for purposes here that the retention rates submitted on line 2 of exhibit 36A are correct, the expected sales figures on line 3 are nonetheless inflated because the expected sales of new Hobart equipment has been included as if there was no termination agreement between Walz and Hobart. When line 3, then, is compared to line 4, representing actual sales by Walz, the study becomes further flawed because the sales figures on line 4 are post-termination sales figures. Therefore, it was improper to compare sales before and after the termination agreement because Walz voluntarily gave up the right to sell new Hobart equipment and should not be allowed to attain damages based, in part, on the loss of sales of new Hobart equipment.

In *Reeder v. Old Oak Town Center* (1984), 124 Ill. App. 3d 1045, 1050, 465 N.E.2d 113, 117, the court stated:

"It is hornbook law that lost profits are not a proper element of damages where proof of those profits is based on speculation or conjecture. However, absolute certainty of this element of damages is unattainable, and all that the law requires is that the evidence establish, with a fair degree of probability, a basis for the assessment of damages. (*Schatz v. Abbott Laboratories, Inc.*

(1972), 51 Ill. 2d 143, 281 N.E.2d 323.)"

We do not believe that Walz has submitted, with a fair degree of probability, evidence sufficient to form a basis from which a jury could compute damages. It is our opinion that a proper measure of damages in this case should be based on a comparison of Walz' sales of Hobart parts and service before and after the termination of 1980. The study submitted by Walz does not do this. Therefore, the jury was without sufficient information upon which to base a damage award. In fact, the damage award in this case reflects that the jury was without sufficient evidence. The $55,000 award of special damages has no basis in the record and the punitive damage award merely trebles the special damage award.

Appellant claims other errors were made with regard to the study submitted by Walz, but we do not believe that those errors will exist on remand and, therefore, will not express an opinion.

For all of the foregoing reasons, we affirm the jury's verdict against Hobart, but reverse and remand for a new trial on the damage issue.

Affirmed in part; reversed in part and remanded.

STOUDER and WOMBACHER, JJ., concur.