F.L. WALZ, INC., Plaintiff-Appellee, v. HOBART CORPORATION, Defendant-Appellant.

Third District   No. 3—91—0284

Opinion filed January 30, 1992.

Heyl, Royster, Voelker & Allen, of Peoria, and Thompson, Hine & Flory, of Cleveland, Ohio (Tom Collins, of counsel), for appellant.

John A. Slevin and James E. Konsky, both of Vonachen, Lawless, Trager & Slevin, of Peoria, for appellee.

JUSTICE HAASE delivered the opinion of the court:

The plaintiff, F.L. Walz, Inc., brought this action to recover damages from the defendant, Hobart Corporation, alleging breach of contract and interference with contractual and prospective contractual relations. A jury originally returned a verdict for Walz, awarding it $250,000 in compensatory and punitive damages. On appeal, this court affirmed the jury's verdict of liability, but remanded for a new trial on the damages issue. (*F.L. Walz, Inc. v. Hobart Corp.* (1987), 157 Ill. App. 3d 334, 510 N.E.2d 1248.) On remand, the jury awarded Walz $252,097.95 in compensatory damages. Hobart appeals.

Walz was a successful franchise agency of Hobart in Peoria from 1966 to 1980, when the agency was terminated. Walz sold and serviced food handling and weighing equipment such as meat saws, wrappers, and scales. Although Walz sold primarily Hobart manufactured equipment, Walz also sold equipment manufactured by other companies. In July 1980, the parties entered into a contract which terminated their agency relationship. It provided that after July 31, 1980, Hobart

would treat Walz as any other customer of Hobart repair parts and that it would not discriminate against Walz in the sale of repair parts.

Following the termination of the agency in 1980 and in early 1981, Walz placed a number of orders for Hobart repair parts with not only the Hobart branch in Peoria, but also with Hobart branches in other cities. The Peoria branch, however, did not fill a number of the orders immediately, even though the branch's inventory control cards indicated that the needed parts were in stock. Walz asserted that Hobart began an intentional scheme to delay, hinder, and prevent Walz from promptly obtaining parts.

A jury found that Hobart's delay in filling orders was intentional and awarded Walz $55,000 as compensatory and $195,000 as punitive damages. On appeal, this court affirmed the jury's verdict against Hobart, but reversed and remanded for a new trial on the damages issue. In so doing, it found that the damage study was flawed because it in part compared *new* Hobart equipment sales before and after the termination agreement. Walz had lost the right to sell new Hobart equipment so damages sustained after termination for new Hobart equipment should not have been included in the study. Instead, the court noted, "a proper measure of damages *** should be based on a comparison of Walz' sales of Hobart [repair] parts and service before and after the termination." *F.L. Walz v. Hobart Corp.* (1987), 157 Ill. App. 3d 334, 341, 510 N.E.2d 1248, 1252.

On remand, the record shows that Walz employee Jody Tabb sorted all of Walz's invoices from alphabetical to chronological order. Ken Friedman, a Walz repairman for 25 years, then took the 37 boxes of invoices sorted by Tabb and arranged them into three groups: (1) parts and labor for Hobart products; (2) labels and film invoices for Hobart products; and (3) all other invoices such as nonbillable work, non-Hobart work, and new equipment.

Friedman sorted through tens of thousands of invoices in the 37 boxes. When finished, he had separated, into chronological order from 1979 through 1988, eight boxes which contained invoices to customers for repair parts and labor for Hobart products. Friedman testified that he could tell by the invoice and the part number whether the invoice was for a piece of Hobart equipment, even though nobody else would probably be able to tell if it was Hobart-related.

On cross-examination, defense counsel questioned Friedman about nine invoices. Friedman admitted that he had put seven of the nine in the wrong pile. He noted, however, that those mistakes were *de minimis* in view of the total number of Hobart-related invoices he separated, which was about 9,400.

After he finished sorting, Friedman gave the eight boxes of invoices to Jody Tabb. Tabb then typed a summary of the eight boxes showing the invoice number, the cost for labor, the amount charged for parts, and the amount shown for supplies and mileage. Tabb's summary was 284 pages and was marked as exhibit No. 47 at trial. From that summary, Walz prepared a one-page summary, showing the totals by year and the monthly average for each. The one-page summary was marked as exhibit No. 48.

Both summaries were provided to Walz's expert, Dennis Bailey, who relied on them in preparing his damage calculations. Bailey testified that he made certain assumptions in measuring the damage to Walz as a result of Hobart's wrongful conduct. Bailey assumed that: (1) the timely access to parts was critical to Walz if it was going to maintain and keep its customers; (2) the historical ratio between service and part sales was $1 of Hobart service sales for every $1 of part sales; and (3) the sale of parts produced a 20% gross profit, while the sale of labor and service produced a 33⅓% profit.

Bailey further testified that a study of the reduction of supply sales for Hobart equipment in the 17 months following termination of the agency would be a reasonable basis to determine the expected sales of repair parts and service on Hobart equipment to Walz's customers after termination. This was based on the assumption that customers who continued to come to Walz for supplies for their Hobart equipment after termination would have, all other factors being equal, also come to Walz for their repair parts and service on that same equipment. Using this theory, Bailey first calculated the percentage of reduction of supply sales for Hobart equipment following the termination of the agency. The reduction was 21.38%, which Bailey attributed to fair competition. In that regard, Bailey noted that Walz was able to acquire most supplies from sources other than the Hobart Peoria branch. Bailey then calculated what he would estimate the sale of parts and repair income would be if there were the same proportionate loss of these customers as the decline of supplies for Hobart equipment. This projected income was then compared with actual sales. Bailey opined that the difference was the result of the wrongful acts of Hobart.

Bailey concluded that for the 101 months following termination, Walz should have sold $941,548 in Hobart parts and $941,548 in service on Hobart equipment. Bailey then compared expected sales with actual sales and found that Walz lost $843,446 for that 101-month period. Bailey then multiplied the lost sales figures by a gross profit margin of 20% for parts and 33⅓% for service work and concluded that

Walz lost $443,413 in gross profits, which represented Walz's actual damages.

Bailey also testified regarding factors he did and did not consider in his damage study. He explained why gross profits equalled net profits in this case, why the recession in the early 1980's had no effect on his study, and why he continued his damage projection for an eight-year period. Regarding the eight-year projection of damages, Bailey reasoned that in Walz's business the equipment being serviced had a useful life of 15 to 30 years. Once a customer lost faith in Walz's ability to timely obtain a repair part, it was very difficult to keep that customer. Conversely, if Walz was able to continue to promptly service that customer, it would, in all likelihood, continue to do so over the useful life of the equipment of 15 to 30 years.

Joseph DeBruyn, a certified public accountant, testified on behalf of the defendant. He stated that he had made a damage study at the defendant's request. DeBruyn opined that as a result of the termination, increased competition, and other factors, Walz's monthly post-termination sales would average $2,406 for parts and $6,209.50 for service. DeBruyn's opinion was based on the actual sales by Walz of parts and service for the four-month period following termination. He limited his study to 36 months ending November 30, 1983. He calculated that the estimated gross profit loss on parts and labor was $33,268. He reduced that figure by 12.5% for variable costs and stated that Walz's total lost net profit was only $20,177.

On appeal, Hobart first argues that plaintiff's exhibit No. 47 was irrelevant, inaccurate, and not an admissible summary under *People v. Crawford Distributing Co.* (1979), 78 Ill. 2d 70, 397 N.E.2d 1362. Hobart further argues that the Bailey damage study was not admissible since it was based on exhibit No. 47.

In *People v. Crawford Distributing Co.*, our supreme court stated:

"It is generally accepted in Illinois that where originals consist of numerous documents, books, papers or records which cannot be conveniently examined in court, and the fact to be proved is the general result of an examination of the whole collection, evidence may be given as to such result by any competent person who has examined the documents, provided the result is capable of being ascertained by calculation. The witness's testimony is admissible since it is merely a statement of what those instruments show and the voluminous character of the original documents precludes their convenient examination in court." *People v. Crawford Distributing Co.* (1979), 78 Ill. 2d 70, 77, 397 N.E.2d 1362, 1366.

■ Here, we find that exhibit No. 47 and the Bailey damage study based on that exhibit were admissible under *Crawford Distributing Co*. Exhibit No. 47 charted over 9,000 invoices that were separated by Friedman. The exhibit only simplified and clarified what the invoices would show if the jurors took the time and had the ability to chart the details. Obviously, it would have been impractical to require the jury to read the entire mass of entries and documents. Although Friedman testified that he was the only person who could ascertain whether an invoice was Hobart-related, the invoices were not for that reason inadmissible. Rather, it was a matter of credibility for the jury to resolve.

Hobart further argues that exhibit No. 47 should have been excluded because it did not represent an examination of all 37 boxes of invoices.

We reject that argument. The relevant issue involved the comparison of Hobart sales of repair parts and service before and after termination. The other 29 boxes were irrelevant to that issue. Nevertheless, Hobart had an opportunity to cross-examine Friedman about the invoices in the other 29 boxes. Friedman testified that his work was accurate and that although he made a few mistakes, they were very minimal in comparison with the large quantity of invoices. On the other hand, Hobart claimed at trial that 32% of the invoices were improperly included in the Hobart pile. Any conflict in the testimony at trial was an issue of credibility for the jury to resolve and did not render the exhibit and the testimony based thereon inadmissible.

Moreover, we find that even if the exhibit was not proper, the damage study was nevertheless properly used by Bailey, since under *Wilson v. Clark* (1980), 84 Ill. 2d 186, 417 N.E.2d 1322, an expert may base his opinion on data, if of a type reasonably relied upon by experts in the field, even though the underlying data is not admitted into evidence or is of a type not admissible.

■ Hobart next argues that Bailey's damage study was flawed. In that regard, it contends that: (1) the study's damage calculation was not causally connected to Hobart's wrongful conduct; (2) it made no effort to exclude other possible causes in the decline in sales; and (3) it was based on gross profits instead of net profits.

We find Hobart's contentions unpersuasive. In the previous appeal of the instant case, this court specifically stated that a proper measure of damages should be based on a comparison of Walz's sales of Hobart parts and service before and after the termination of 1980. The record reveals that Walz had established a very successful business. Expert testimony indicated that Walz's customers who contin-

ued to look to Walz for supplies for their Hobart equipment would have also looked to Walz to buy parts and service for their Hobart equipment had Walz been able to obtain parts. The only practical way of proving damages was by an overall analysis of the Hobart repair parts and service segment of Walz's business. Under these circumstances, we find that the evidence was causally connected to Hobart's wrongful conduct.

Regarding the failure to exclude other possible causes of the decline in sales, we note that Walz was not required to analyze every conceivable contingency that might affect sales. If Hobart believed that certain factors affected the damage study, it was free to present its own testimony in that regard or cross-examine Walz's expert. The jury could then have evaluated the conflicting evidence.

Regarding the gross profit basis of the study, we note that Bailey explained that gross profits equaled net profits because the overhead expenses were already incurred by Walz and would not have increased if the sale of parts and service would have been as projected rather than actual. Therefore, it was unnecessary to further reduce the gross profit by an overhead factor to determine net profit. Accordingly, we find that the trial court did not err in admitting the study.

Hobart next argues that the jury's verdict was not based on the evidence in the record. It contends that the verdict was improper because it was not the exact figure offered by either of the two experts, nor was it based on any combination of the assumptions of the two experts.

None of the cases cited by Hobart stand for the proposition that a jury verdict must match either of two experts' figures, or a combination of their assumptions. Rather, all the law requires is that the evidence tend to establish, with a fair degree of probability, a basis for the assessment of damages. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 281 N.E.2d 323; *Reeder v. Old Oak Town Center* (1984), 124 Ill. App. 3d 1045, 465 N.E.2d 113.) The ascertainment and assessment of damages is a question of fact for the jury; although the amount may not be speculative, it need not be proved with mathematical certainty. (*Mohr v. Dix Mutual County Fire Insurance Co.* (1986), 143 Ill. App. 3d 989, 493 N.E.2d 638.) The jury must bring in a verdict within the range of the valuation testimony presented. *City of Benton v. Odom* (1984), 123 Ill. App. 3d 991, 463 N.E.2d 785.

■■ In the instant case, the jury's verdict was within the range of valuation testimony presented by the parties' experts. Where experts differ on the amount of damages, there is no rule of law requiring that a jury agree with one or the other or that its award be capable of

precise determination. Furthermore, a jury may reduce an expert's damage calculations without invalidating the verdict. (See *National Bank v. Doss* (1986), 141 Ill. App. 3d 1065, 491 N.E.2d 106.) Accordingly, we find that the verdict was supported by the evidence and should not be reversed.

Hobart next argues that the trial court improperly granted Walz's motion *in limine* to exclude certain evidence.

Prior to trial, the trial court entered an order, on Walz's motion, preventing Hobart from introducing any evidence relating to the amount of sales made by Walz in the non-food-related aspects of its business. Hobart argues that the order was improper because the evidence should have been admitted to show that despite the disruption in the service and repair of Hobart equipment, Walz was able to mitigate its damages in unrelated aspects of its business.

■■ We disagree with Hobart's argument. Hobart wanted to introduce evidence about Walz's sales of large industrial scales, which was unrelated to Hobart's food-handling equipment. We find that the proffered evidence was not relevant to the issue in dispute. The cases cited by Hobart are distinguishable. Accordingly, we find that the trial court did not abuse its discretion in excluding the evidence.

Hobart next contends that the trial court improperly prevented Hobart's expert from testifying that Walz's gross profit margin for the sale of parts in March and April of 1981 was 11%. In response, Walz contends that the testimony was properly excluded under Supreme Court Rule 220(d) (107 Ill. 2d R. 220(d)).

Supreme Court Rule 220(d) provides:

> "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." 107 Ill. 2d R. 220(d).

■■ We find that the testimony was properly excluded. The testimony goes beyond the scope of facts and opinions disclosed in discovery. Hobart's expert devoted his pretrial preparation to analyzing and disagreeing with the Bailey damage study. Yet, in his deposition, he did not disclose an opinion disagreeing with the 20% gross profit calculation. Moreover, Hobart's expert in his own damage study computed damages at the gross profit percentage of 20% on the sale of

parts. Under the circumstances, we find that the trial court properly excluded the evidence.

Lastly, Hobart contends that Walz was entitled to only nominal damages. For the reasons previously stated, we find that Hobart's argument in that regard is without merit.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SLATER and STOUDER, JJ., concur.