WARREN ALLABASTRO *et al.*, Plaintiffs-Appellees, *v.* WILLIAM E. CUMMINS *et al.*, Defendants-Appellants.

First District (1st Division)    Nos. 79-1878, 79-2319 cons.

Opinion filed November 10, 1980.

Richard M. Kates, of Chicago, for appellants.

John L. Beermann & Associates, Ltd., of Libertyville, and Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Warren Allabastro and Elmer A. Anderson (plaintiffs) brought this action against William E. Cummins, David L. Weissman, Equity Financial Corporation and Surety Mortgage Corporation (defendants) for breach of contract. After trial, the court awarded plaintiffs $1500 actual and $10,000 punitive damages. Defendants appeal.

The written contract was entered into by plaintiffs and Equity Financial Corporation (Equity). Equity, a Delaware corporation, subsequently changed its name to Surety Mortgage Corporation. The contract was signed by both plaintiffs and by defendant Cummins as vice president of Equity. The contract provided Equity would act as plaintiffs' exclusive agent in obtaining a $225,000 loan for plaintiffs. The rate of interest was to be "2½% to 3% above the current prime rate, floating," and there was to be a premium of 3 1/3% annually for a (3) three year guarantee, or 10% payable at closing." The contract further stipulated:

"APPLICANT [plaintiffs] has this date paid to AGENT [Equity] the sum of $1,500, said sum to be deposited into AGENT'S escrow account pursuant to the terms of this agreement, and said sum shall be considered as earned fees by AGENT upon issuance by AGENT of the commitment hereinbefore referred to, with the balance of the premium being due and payable out of the proceeds at the closing of the loan. In the event a commitment upon the terms and conditions hereinbefore referred to is not provided by term date, the escrow funds shall be immediately refunded to the APPLICANT."

The record shows a letter from South Shore National Bank to the defendant Surety Mortgage Corporation indicating the bank was willing to extend a loan to plaintiffs but the terms indicated in the letter are different from those contemplated in the contract between the parties.

Pursuant to Supreme Court Rule 323 (Ill. Rev. Stat. 1979, ch. 110A, par. 323), the parties by stipulation agreed to a bystander's report of proceedings.

Plaintiff Allabastro testified he had personal conversations with defendant Cummins and telephone conversations with defendant Weissman. Allabastro testified the loan was not closed because his wife was required to sign all the loan documents and the points and interest rates quoted in the letter were not the same as set forth in the contract between the parties. Allabastro demanded return of his $1500 deposit. Payment of this refund was continually delayed. "These delaying tactics were pursued by both of the individual defendants." Allabastro further testified he relied on the representations in the loan agreement he signed, "the money was being segregated in a separate escrow account and would be returned if there was a failure to obtain the required financing."

David Weissman testified he is president of defendant Surety Mortgage Corporation. He stated the loan transaction was submitted to South Shore National Bank which agreed to make a loan to plaintiffs. The defendant corporation had also obtained financial reports on plaintiffs and had arranged for a surety bond for the loan. On direct examination, Weissman stated the corporation refused to refund the $1500 deposit because it had obtained the loan plaintiffs had sought. Furthermore, the bank had agreed not to require signature of Allabastro's wife on the loan documents. However, on cross-examination, Weissman admitted the loan that was described in the agreement and was being sought by plaintiffs was not the same as the loan commitment which South Shore National Bank had made in its letter. He further admitted Allabastro demanded refund of the deposit pursuant to the agreement between the parties. Finally, Weissman admitted no funds were deposited in a segregated

escrow account. Instead, the deposit made by plaintiffs was commingled with other corporate funds.

The trial judge found the terms in the loan commitment obtained from the South Shore National Bank differed substantially from the terms required by the contract between the parties. He further found there was no deposit of plaintiffs' funds into an escrow account as required by the contract. The trial judge concluded the contract was tainted by fraud in the inducement by the defendants and although defendant Cummins "was the direct liason with the plaintiffs, defendant Weissman at all times understood and knew the nature of the transaction and the way business was being conducted." The trial judge held plaintiffs were entitled to recover the $1500 deposit and awarded $10,000 punitive damages against all the defendants.

In this court, defendants contend it was error to hold the individual defendants personally liable, no damages were proven from the failure to place the $1500 deposit in escrow, and it was error to award punitive damages against the individual and corporate defendants.

## I.

■■ ■ Defendants first argue the record is lacking "as to anything that would cause the individual defendants acting as corporate officers to be individually liable. Any liability would be the corporation's alone." This is the extent of defendants' argument on this point in their initial brief. Defendants' reply brief does attempt to raise some points in support of this argument. However, "[A] point not argued in the briefs may not be raised in the reply brief, in oral argument, or on petition for rehearing." (*Village of Crainville v. Argonaut Insurance co.* (1980), 81 Ill. 2d 399, 405, and authorities there cited.) Also, because defendants did not support their contention with adequate argument, including references to the record, it would be within our discretion to refuse to consider this contention. (*Little Rock Missionary Baptist Church v. Olex* (1979), 73 Ill. App. 3d 402, 404, 392 N.E.2d 130; *In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 288 N.E.2d 520.) However, we have considered this argument, and we have concluded the trial court was correct in finding the individual defendants personally liable.

■■ The agreement between the parties established a relationship of principal and agent. The agreement itself referred to Equity as "agent." Equity, acting through its corporate officers (the individual defendants), had an exclusive agency to obtain a loan commitment for plaintiffs. "A person who undertakes to manage some affair for another, on the authority and for the account of the latter, who is called the principal, is an agent." (*In re Estate of Morys* (1973), 17 Ill. App. 3d 6, 9, 307 N.E.2d

669.) "Where * * * one voluntarily acts as an agent for another, a fiduciary relationship exists as a matter of law." (*Ray v. Winter* (1977), 67 Ill. 2d 296, 304, 367 N.E.2d 678.) It is clear defendants undertook to obtain financing on plaintiff's authority and for plaintiffs' account. Thus, a fiduciary relationship existed between the parties as a matter of law.

In *Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 680-81, 381 N.E.2d 821, this court stated:

> "Where a fiduciary relationship exists at the time of a transaction whereby the dominant party appears to gain, the transaction is deemed presumptively fraudulent but such presumption is not conclusive and may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him. (*Jones v. Washington* (1952), 412 Ill. 436, 107 N.E.2d 672.) * * * ."

Defendants did not rebut this presumption at trial. Defendant Weissman admitted Equity did not meet the conditions of the agreement with plaintiffs. Plaintiff Allabastro demanded refund of the deposit but was wrongfully refused. The deposit was not placed in escrow but was commingled with other corporate funds. The action of commingling the funds and refusing to refund them pursuant to written agreement by Equiry constituted a breach of the fiduciary relationship and also fraudulent conduct by defendant Equity.

This record convinces us the individual defendants both participated personally in this transaction and breach of fiduciary relationship. "As a general rule a corporate officer or director is not liable for the fraud of other officers or agents merely because of his official character, but his is individually liable for fraudulent acts of his own or in which he participates." (*Citizens Savings & Loan Association v. Fischer* (1966), 67 Ill. App. 2d 315, 322, 214 N.E.2d 612, *appeal denied* (1966), 33 Ill. 2d 627.) In the instant case, Weissman and Cummins respectively were president and vice president of Equity. The corporation necessarily acted only through them. Allabastro's uncontroverted testimony indicates he personally dealt with both Weissman and Cummins. When Allabastro demanded return of his $1500 deposit, he was "continually stalled. These delaying tactics were pursued by both of the individual defendants." Such evidence demonstrates both corporate officers personally instigated or participated in this breach of the fiduciary relationship. Therefore, the trial court did not err in finding these defendants personally liable.

## II.

Defendants next argue no actual damages from failure to place the $1500 deposit in escrow were proven by plaintiffs. However, plaintiffs obviously suffered $1500 actual damages since the deposit was not only

never placed in escrow but also was never returned to them. The main purpose of plaintiffs' suit was to recover $1500 in damages to compensate them for defendants' failure and refusal to refund this money pursuant to the agreement of the parties.

## III.

Defendants' final contention is there is no basis for exemplary damages here and in any event, "exemplary damages of over 600% is so disproportional as to require reversal."

Our supreme court recently stated (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353):

> "It has long been established in this State that punitive or exemplary damages may be awarded * * * when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others [citation]. Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future. [Citations.] And, while the measure of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law. [Citations.]"

See also *Dethloff v. Zeigler Coal Co.* (1980), 82 Ill. 2d 393, 412 N.E.2d 526.

■■ Although the within action was based on breach of contract, exemplary damages were proper since the breach of fiduciary relationship constituted "a separate and independent tort." (*Kelsay*, 74 Ill. 2d 172, 187.) In *Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 682-83, this court approved punitive damages against a defendant who breached a fiduciary relationship with plaintiff.

Chief Justice Warren Burger, while a circuit judge, writing for the District of Columbia Court of Appeals, stated (*Brown v. Coates* (D.C. Cir. 1958), 253 F. 2d 36, 40):

> "We need not adopt any single, particular formula in upholding an award of punitive damages against a faithless agent. On the contrary, we believe each case must be considered on its peculiar facts; but once it has been shown that one trained and experienced holds himself out to the public as worthy to be trusted for hire to perform services for others, and those so invited do place their trust and confidence, and that trust is intentionally and consciously disregarded, and exploited for unwarranted gain, community protection, as well as that of the victim, warrants the imposition of punitive damages."

Definitely, the breach of fiduciary relationship by the corporate and individual defendants here warrants the imposition of punitive damages against them all. However, in our opinion, the amount of the punitive damages awarded by the trial court is excessive.

While, in Illinois, "it is well settled that punitive damages need not bear a proportional relationship to actual damages" (*Hannigan v. Sears, Roebuck & Co.* (7th Cir. 1969), 410 F. 2d 285, 294, *cert. denied* (1969), 396 U.S. 902, 24 L. Ed. 2d 178, 90 S. Ct. 214), they do depend "upon the motive, purpose and condition of mind and heart of the wrongdoer and the circumstances and manner of his doing the wrong." (*Donovan v. Consolidated Coal Co.* (1900), 88 Ill. App. 589, 598, *affirmed* (1900), 187 Ill. 28; *Bucher v. Krause* (7th Cir. 1952), 200 F.2d 576, 587, *cert. denied* (1953), 345 U.S. 997, 97 L. Ed. 1404, 73 S. Ct. 1141.) In the instant case, the only basis we can surmise from the record for the award of $10,000 punitive damages is that this amount was prayed for in plaintiffs' complaint.

■■ Defendants did actually attempt to procure a loan commitment from a bank and a surety bond from an insurance company. Their conduct was not completely reprehensible. They did at least try to honor part of their obligation created by the agreement. We have examined and compared cases in which the amount of punitive damages was in question. (*National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 176-77, 383 N.E.2d 919; *Hannigan*, 410 F. 2d 285, 293-94; *Gass v. Gamble-Skogmo, Inc.* (7th Cir. 1966), 357 F. 2d 215, 220-21, *cert. denied* (1966), 384 U.S. 943, 16 L. Ed. 2d 541, 86 S. Ct. 1464; *Selimos v. Christ* (1947), 331 Ill. App. 412, 73 N.E.2d 152.) We have concluded a fair award of punitive damages against the defendants is $4500.

Accordingly, the judgment appealed from is modified to award plaintiffs $1500 actual damages and $4500 punitive damages against all three defendants. As thus modified, the judgment appealed from is affirmed.

Judgment affirmed, as modified.

McGLOON and O'CONNOR, JJ., concur.