**Julio DeLEON and Norma DeLeon, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**BENEFICIAL CONSTRUCTION COMPANY; George Datro; Dolphin Mortgage Corporation; and George Zachary, Defendants.**

No. 97 C 40.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 26, 1999.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Edelman & Combs, Chicago, IL, Richard Joseph Doherty, Horwitz, Horwitz & Assoc., Chicago, IL, for Julio DeLeon, Norma DeLeon.

Frank John Kokoszka, John Ludwik Janczur, Kokoszka & Janczur, Chicago, IL, for Beneficial Contruction Co., George Datro.

Phillip A. Brock, Stein, Ray & Conway, Chicago, IL, Robert M. Hatch, George A. Platz, Lovell, White & Durrant, Chicago, IL, for Guaranty Bank, S.S.B., Guaranty Home Equity Corp.

Donna C. Thomas, Law Office of Donna Thomas, Naperville, IL, Gilbert C. Schumm, Law Office of Gilbert C. Schumm, Northbrook, IL, for Dolphin Mortgage Corp.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiffs Julio and Norma DeLeon (the DeLeons) originally filed this ten-count class action litigation on January 3, 1997, naming as defendants Beneficial Construction Company, George Zachary, Guaranty Bank, S.S.B., Guaranty Home Equity Corporation, doing business as GB Home Equity, Dolphin Mortgage Corporation and George Datro. Early in 1998 defendants Dolphin, Datro and Zachary moved to dismiss several of the claims and this court granted those motions in part, giving plaintiffs leave to amend the complaint. *See DeLeon v. Beneficial Construction Co.*, 998 F.Supp. 859 (N.D.Ill.1998). On February 26, 1998, the DeLeons filed a six-count amended complaint in which plaintiffs claim the following: [1] In count I, plaintiffs allege that Datro and Dolphin Mortgage violated RESPA, 12 U.S.C. § 2607(b), and HUD Regulation X, 24 C.F.R. § 3500.14(c), by receiving payment for mortgage-related settlement services when in fact the parties performed no such services.[2] In count II, plaintiffs allege that Beneficial Construction breached its contract with the DeLeons by failing to complete the construction on the DeLeons' home and by performing grossly defective work on the portion that was completed.[3] In count III, plaintiffs allege that Beneficial Construction and Zachary violated the Illinois Consumer Fraud Act by obtaining applications for the financing of home improvements in a fraudulent manner.[4] In count IV, plaintiffs allege that Dolphin Mortgage and Datro breached their fiduciary duty to provide mortgage brokering services to plaintiffs.[5] In count V, plaintiffs allege that Beneficial Construction violated the Truth in Lending Act and Regulation Z by failing to provide plaintiffs with the regulation's required disclosures.[6] In count VI, plaintiffs allege that Beneficial Construction and Zachary violated section 2 of the Illinois Consumer Fraud Act, 8125 ILCS 505/2, by concealing the annual percentage rate involved in plaintiffs' transactions, by telling plaintiffs that they would pay no interest, when that was not the

---

1. Guaranty Bank and Guaranty Home Equity Corporation are no longer named as defendants.

2. This claim was not contained in the original complaint.

3. In the original complaint, this claim was stated as count III.

4. In the original complaint, this claim was stated as count IV.

5. In the original complaint, this claim was stated as count V.

6. In the original complaint, this claim was stated as count VIII.

case, and by including coercive and unconscionable credit provisions in the construction contract.[7]

On April 30, 1998, Beneficial Construction filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Northern District of Illinois. *See In re Beneficial Construction Co.*, 98 B 13459 (1998) (J. Sonderby). On November 4, 1998, the bankruptcy court closed Beneficial's case on the grounds that there were no assets to distribute and discharged the trustee.

Defendants have moved to dismiss the amended complaint in its entirety.[8] For the reasons stated below, we grant defendants' motion to dismiss counts III, V, VI and deny with respect to counts I, II, IV.

## BACKGROUND

In deciding a motion to dismiss we accept the plaintiffs' well-plead allegations as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Travel All Over the World, Inc. v. The Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir.1996). We have previously set forth the facts of this case in our earlier opinion and for convenience will simply restate them here:

On April 16, 1996, Mr. And Mrs. DeLeon (the "DeLeons") hired Beneficial Construction Company ("Beneficial Construction") to do some work on their home in Chicago, Illinois. Specifically, Beneficial Construction agreed to level the basement floor, create a basement apartment, install central air conditioning and make improvements to the kitchen for a contract price of $22,000. The DeLeons gave a $1,000 down payment check to George Zachary, the president of Beneficial Construction, and signed a document titled "Agreement Between Owner and Contractor" which

provided that the remaining $21,000 cost would be financed.

In order to arrange the financing for the project, Beneficial Construction referred plaintiffs to a mortgage broker, George Datro ("Datro") who worked for Dolphin Mortgage Company ("Dolphin"). According to the plaintiffs, this was not the first time that Zachary had referred his construction clients to Dolphin in order to assist them with [financing Beneficial's construction projects]. Datro was hired to help the DeLeons find favorable financing and it was agreed he would be paid a commission amounting to approximately 8% of the loan sought by the DeLeons. Plaintiffs allege, however, that Datro never shopped the market for the best mortgage terms. Instead, he referred the DeLeons to two banks, Guaranty Bank ("Guaranty Bank") and GB Home Equity Corporation d/b/a GB Home Equity ("GB Home Equity"), with whom he either had some sort of standing referral agreement or whom he had preselected as a lender.... [P]laintiffs claim that as a result of Datro's fraudulent acts, not only did they not receive the most favorable mortgage terms available to them, but also were defrauded out of the 8% commission they paid to Dolphin Mortgage.

On May 29, 1996 Guaranty Bank and GB Home Equity loaned approximately $44,000 to the DeLeons, $3,520 of which was disbursed for the purpose of paying Dolphin's commission. The promissory note and the accompanying disclosure forms list both Guaranty Bank and GB Home Equity as the lender. Guaranty Bank and GB Home Equity issued four checks for $10,500 each, two of which were made out jointly to the DeLeons and Beneficial Construction as co-payee.

---

7. In the original complaint, this claim was stated as count X.

8. Two separate motions to dismiss have been filed, one by Dolphin Mortgage, which we will

refer to as the Dolphin memorandum, and the other by Beneficial Construction, Zachary and George Datro, which we will refer to as the Beneficial memorandum.

Plaintiffs gave these checks to Beneficial Construction.

After the financing was completed, Beneficial Construction started work on the DeLeons' home on June 11, 1996. They continued to work until July 19, 1996 when it rained heavily in the Chicago area and the DeLeon's basement flooded, causing extensive damage to the basement interior. Shortly after the flooding, Beneficial Construction stopped working on the DeLeons' home and abandoned the project before it was completed. Plaintiffs then discovered that much of the work that had been performed was defective and that the materials used were of inferior quality and did not meet industry standards. Guaranty Bank and GB Home Equity informed plaintiffs that the mortgage loan would have to be repaid notwithstanding the defects in the so-called improvements performed by Beneficial Construction. Accordingly, the DeLeons brought the instant action and have asked to be certified as a class under Federal Rule of Civil Procedure 23. The class certification issue has yet to be decided.

## ANALYSIS

A. *Real Estate Settlement Procedures Act*

In count I plaintiffs allege that Datro and Dolphin Mortgage violated RESPA, 12 U.S.C. § 2607, and HUD Regulation X, 24 C.F.R. § 3500.14(c), by receiving payment for mortgage-related settlement services without performing any such service. Section 2607 prohibits two separate types of conduct, kickbacks and fee-splitting, providing:

(a) Business referrals

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a fed-erally related mortgage loan shall be referred to any person.

(b) Splitting charges

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

Plaintiffs' complaint does not state under which provision, (a) or (b), they proceed, nor do the federal pleading standards require them to. *See Goren v. New Vision Intern., Inc.,* 156 F.3d 721 (7th Cir.1998) (noting that a plaintiff in federal court does not need to point out the exact statute or subsection under which he is entitled to relief, as long as relief is possible under any set of facts that can be established as consistent with the allegations in the complaint); *Abdoh v. City of Chicago,* 930 F.Supp. 311, 312 (N.D.Ill.1996) (same). We consequently examine plaintiffs' claim to determine whether its allegations are sufficient to support a claim under either part.

Both defendants move to dismiss this count. Dolphin, apparently assuming that plaintiffs' claim is based on § 2607(a), argues that any "sham" payment or kickback must be made as part of a business arrangement with a third party, such as the lender, in a scheme designed to defraud the consumer. Dolphin states that because plaintiffs do not allege that it was involved in such a business arrangement with GB Home Equity and Guaranty Bank, they have failed to state a proper claim under RESPA (Dolphin mem. at 3). Datro also makes this argument, which we reject.

█ The requirement that defendants be engaged in a business arrangement with a third party applies only to claims brought under § 2607(a), as Dolphin and Datro are both aware. Plaintiffs' com-

plaint, however, is sufficient to state a claim under subsection (b). The regulations accompanying subsection (b) emphasize that "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section." 24 C.F.R. § 3500.14(c). Plaintiffs specifically aver that they hired Dolphin, a mortgage brokerage company, and Datro, one of Dolphin's agents, to find the most favorable financing agreement to fund the improvements to the DeLeon's house (cplt., ¶ 28), that these defendants did not seek such terms (id., ¶ 32), and defendants charged $3,520, or 8% of the mortgage loan taken by plaintiffs, for rendering this sham service (id., ¶ 42). As we observed in our previous opinion, these allegations are more than sufficient to state a claim that defendants levied a charge for services that were not in fact rendered under § 2607(b). See DeLeon, 998 F.Supp. at 864; United States v. Gannon, 684 F.2d 433, 437–438 (7th Cir.1981) (holding that § 2607(b) prevents payment of fees to individuals who performed no service) cert. denied, 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 248 (1981).

Dolphin also argues that plaintiffs have failed to produce evidence supporting their claim that an 8% mortgage brokerage fee is excessive as a matter of law. For the same reasons we stated above, we reject this argument as irrelevant. Under RESPA's plain language, any charge is excessive where it is collected for services never provided.

## B. Breach of Contract

In count II, plaintiffs allege that Beneficial Construction breached its contract with the DeLeons by failing to complete the construction on the DeLeons' home and by performing grossly defective work on the portion that was completed. Defendant argues that this count must be dismissed because Beneficial has filed for Chapter 7 bankruptcy and under that statute any judicial proceedings pending against the debtor are subject to an automatic stay until the bankruptcy case is completed (Beneficial reply, at 3).

It is true that under Chapter 7 an automatic stay goes into effect upon the debtor's filing for relief. 11 U.S.C. § 362(a)(1). The stay prevents creditors from making any attempt to collect from the debtor until the bankruptcy court has had an opportunity to collect, liquidate and distribute debtor's assets, and will remain in effect until the case is closed, dismissed, or the debtor is discharged. 11 U.S.C. 362(c)(2)(A)-(C). Where the bankruptcy trustee makes a finding that a corporate debtor has no assets, the court will issue an order closing the case without distributing the assets. Unlike an individual debtor, however, a corporate debtor will not receive a discharge. 11 U.S.C. 727(a)(1) (in order to receive a discharge the debtor must be an individual).

■ Here, the bankruptcy court has closed Beneficial's Chapter 7 case, see In re Beneficial Construction Co., Order to Close Case and Discharge Trustee, November 4, 1998 (J. Sonderby), and the automatic stay has been consequently lifted. The DeLeons were listed as unsecured general creditors in that action, but because Beneficial is a corporate debtor, the closure did not discharge their claim. Thus, plaintiffs are entitled to prosecute their claim here, despite the fact that Beneficial is insolvent and certainly judgment-proof. In short, even if plaintiffs prevail, they will likely be left with little more than a piece of paper not worth the cost of its enforcement. Nonetheless, because plaintiffs have not dismissed this claim we will consider it here along with Beneficial's motion to dismiss.

The only substantive argument Beneficial makes in its motion to dismiss count II is that the court has no jurisdiction over this state law breach of contract claim because the RESPA claim in count I is meritless (Beneficial mem., at 3). Since we have determined that plaintiffs' count I was sufficient to state a claim under RES-

PA, this argument fails. Moreover, we find that the allegations contained in plaintiffs' complaint are more than adequate to state a claim for breach of contract. For these reasons defendant Beneficial's motion to dismiss count II is denied.

### C. Illinois Consumer Fraud Act

In count III, plaintiffs allege that Beneficial Construction and Zachary violated the Illinois Consumer Fraud Act when they (1) obtained applications from plaintiffs for financing the construction work in a manner designed to leave plaintiffs without legal recourse in the event they abandoned the job; (2) abandoned the job; and (3) represented to plaintiffs that they intended to complete the job when in fact they did not. In their earlier motion to dismiss this same charge from the original complaint (then styled count IV), the defendants argued that plaintiffs had failed to state a claim under the Illinois Consumer Fraud Act because they did not plead with specificity and, agreeing, we granted the motion to dismiss. *See DeLeon,* 998 F.Supp. at 865–66.

Section 2 of the Illinois Consumer Fraud and Deceptive Practices Act prohibits the use of unfair or deceptive practices by use of misrepresentation, fraud or the concealment of a material fact with the intent that others rely on the deception. 815 ILCS 505/2. To bring a claim under the Illinois Consumer Fraud Act a plaintiff must set forth (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving a trade or commerce; and (4) that the consumer fraud proximately caused the plaintiff's injury. *See Anderson v. Rizza Chevrolet, Inc.,* 9 F.Supp.2d 908, 915 (N.D.Ill.1998); *Native American Arts, Inc. v. Village Originals, Inc.,* 25 F.Supp.2d 876, 882 (N.D.Ill.1998). In addition, claims under ICFA brought in federal court fall within Federal Rule of Civil Procedure 9(b), under which a plaintiff claiming fraud must state the circum-stances constituting the fraud with particularity. Consequently, plaintiffs must also specifically aver the "identity of the persons making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *See Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992); *Gallagher Corp. v. Massachusetts Mut. Life Ins. Co.,* 940 F.Supp. 176, 180 (N.D.Ill.1996). Despite the specificity requirement, the federal courts remain a notice pleading system, where "a suit should not be dismissed so long as it is possible to hypothesize facts, consistent with the complaint, that would make out a claim for relief." *Petri v. Gatlin,* 997 F.Supp. 956 (N.D.Ill.1997) (refusing to dismiss an ICFA claim where plaintiffs at least generally alleged that defendants disseminated brochures with false information, approved the content of the brochures, and knew the content was false).

Defendants Zachary and Beneficial Construction first argue that the ICFA claim must be dismissed because plaintiffs' amended complaint, like the original, does not meet the general pleading requirements of a consumer fraud claim, but rather constitutes no more than a simple claim for breach of contract (Beneficial mem., at 4). Defendants also assert that plaintiffs' amended ICFA claim still fails to meet the specificity requirements of Rule 9(b) (Beneficial reply at 4). We agree.

The only statements plaintiffs make that can be construed to support their ICFA claim are the following:

17. On April 16, 1996, plaintiffs contracted with Beneficial Construction for $22,000 worth of home improvement work ... In connection with this transaction, plaintiffs signed an "Agreement between owner and contractor," which is attached as *Exhibit A.* Plaintiffs paid a cash deposit of $1,000, *Exhibit B,* and the balance was to be financed in accordance with *Exhibit A.*

18. *Exhibit A* specifically refers to the "Amount to be Financed," but only estimates the monthly payment and fails to detail the number of payments, the APR, the finance charges and the time when payments are due.

19. Beneficial Construction referred plaintiffs to Guaranty Bank and GB Home Equity, through a purported mortgage broker, George Datro. Plaintiffs had no prior relationship with Datro
. . . .

59. Beneficial Construction and Zachary engaged in unfair and deceptive practices in the following manner:

a. Agents and/or employees of Beneficial and Zachary, on Zachary's orders and/or with Zachary's knowledge, met with the plaintiffs at the beginning of the transaction (most likely the date on the contract), and obtained applications for financing of construction work in a manner calculated to leave plaintiffs without recourse in the event they took plaintiff's money and abandoned the work;

b. The agents and/or employees then, with Beneficial and Zachary's knowledge and/or approval, took plaintiffs' money and then abandoned the construction job;    .

c. Beneficial and Zachary, through their agents and/or employees, never intended to complete the job, despite their representation to the contrary to the plaintiffs, constituting an unfair and deceptive act.

It is impossible to conclude from these paragraphs exactly what act of concealment, misrepresentation or omission defendants Beneficial Construction and Zachary undertook in the process of arranging the financing for plaintiffs' home improvements. It is simply not enough for plaintiffs to allege that the defendants obtained applications for financing in a fraudulent "manner," without specifying at least some facts indicating, or from which one could infer, some specific act which defendants undertook with the intent that plaintiffs be misled. In every case in this jurisdiction where the court has allowed a consumer fraud action to proceed over a motion to dismiss, the plaintiff has alleged some specific act, series of acts, or omission by the defendant from which the court could plainly infer fraudulent conduct. *Bixby's Food Systems, Inc. v. McKay*, 985 F.Supp. 802, 807 (N.D.Ill.1997) (allegations of specific statements made and facts actually concealed in order to induce plaintiffs into buying into defendants' franchise met specificity requirements); *Stern v. Great Western Bank*, 959 F.Supp. 478, 487 (N.D.Ill.1997) (allegations of specific acts taken by the defendant in order to create an atmosphere where plaintiff had to purchase automobile service plan or lose the value of his investment in the vehicle were sufficiently specific for ICFA claim); *Lefebvre Intergraphics, Inc. v. Sanden Machine Ltd.*, 946 F.Supp. 1358, 1369 (N.D.Ill. 1996) (plaintiff listed the specific statements made by defendant that plaintiff intends to prove false). When considering ICFA claims, the Illinois state courts, which also require specific pleading in fraud cases, enforce the specificity requirement even more stringently. *See, e.g. Hirsch v. Feuer*, 299 Ill.App.3d 1076, 234 Ill.Dec. 99, 702 N.E.2d 265, 272 (1st Dist. 1998) (finding that it is not enough under ICFA to aver that the defendant took a fraudulent step or made a false statement, without stating what the step or misstatement actually is). Plaintiffs in this case simply do not tell us what facts Zachary and Beneficial allegedly misrepresented or concealed in arranging the financing of the home improvements. Similarly, without any specific corroborating allegations, their claim that defendants entered into the improvements contract with no intention of completing the work amounts to little more than a common breach of contract action, which is insufficient to establish a claim under ICFA. *See Petri*, 997 F.Supp. at 967–8 (mere allegations that defendant entered into contracts that it had no intention of fulfilling renders ICFA

claim suspect because ICFA claim must state more than action for common law breach of contract).

We recognize that plaintiff's contract claim against Beneficial is in all likelihood worthless, that any recovery on the alleged construction scam will have to come from defendant Zachary, and that much of the information plaintiffs seek to develop can only come, if it exists, from persons or records related to Beneficial. We believe, however, that plaintiffs must be somewhat more specific than they have been to comply with Rule 9(b). Count III is dismissed with, for a final time, leave to amend within 20 days.

### D. *Breach of Fiduciary Duty*

In count IV plaintiffs allege that Dolphin Mortgage and Datro were the plaintiffs' fiduciaries and as such had a duty to exercise diligence in finding a competitively priced mortgage to finance plaintiffs' home improvements (cplt., ¶ 63–4). Plaintiffs further allege that defendants did not attempt to find favorable financing, but rather simply passed plaintiffs through to GB Home Equity and Guaranty Bank, the companies that ultimately furnished the mortgage (*id.* at ¶¶ 19, 21, and 64). Plaintiffs claim that as a result they had to pay a significantly greater interest rate for their loan, as well as higher closing costs and financing charges. (*id.* at ¶ 33). They also claim that because Dolphin Mortgage and Datro did not in fact perform the service for which they were hired, the 8% fee they collected was excessive as a matter of law.

Defendants Datro and Dolphin Mortgage separately move to dismiss this count. First, Dolphin argues that plaintiffs' claim for breach of fiduciary duty must be plead with specificity and because plaintiffs have failed to plead facts sufficient to show that Datro breached its duty to find a competitively priced mortgage the claim must be dismissed. Second, both Dolphin and Datro argue that the plaintiffs have failed to prove that the 8%

fee is unreasonable because their only duty was to find financing for the construction on plaintiffs' loan and plaintiffs did, in fact, receive financing. We addressed arguments similar to these in our previous opinion and because neither Dolphin Mortgage nor Datro point to any new authority supporting their claims we will deal only cursorily with them here.

In Illinois, when one party undertakes to find financing on behalf of another, a principal and agent relationship is created. *Allabastro v. Cummins,* 90 Ill.App.3d 394, 45 Ill.Dec. 753, 413 N.E.2d 86, 87–8 (1st Dist.1980) (" 'A person who undertakes to manage some affair for another, on the authority and for the account of the latter, who is called the principal, is an agent' " (citation omitted)). An agent owes fiduciary duties to his principal as a matter of law (*id.* 413 N.E.2d at 87–88); *Kirkruff v. Wisegarver,* 297 Ill.App.3d 826, 231 Ill.Dec. 852, 697 N.E.2d 406, 410 (4th Dist.1998). An agent owes his or her principal a duty of exercising reasonable care, skill and diligence, and under the common law a principal can recover for any loss or damage resulting from the agent's breach of this duty. *Ores v. Willow West Condominium Ass'n,* 1998 WL 852839 (N.D.Ill. 1998). To state a claim for breach of fiduciary duty in Illinois, plaintiff must allege (1) the existence of a fiduciary duty; (2) a breach of that duty, and (3) resulting damages. Although Illinois common law requires that a claim for breach of fiduciary duty be plead with particularity, this claim is brought in federal court and as a result plaintiff need only meet the federal notice pleading standard by making the minimal allegations necessary to give defendant notice of the charge against him. *Dvorak v. Mostardi–Platt Assocs., Inc.,* 1998 WL 485681, *3 (N.D.Ill.1998) (for Illinois breach of fiduciary duty claim brought in federal court all that is required of plaintiff is "a short and plain statement of the claim showing that the pleader is entitled to relief" as detailed in Fed.R.Civ.P. 8(a)(2)); *Neuma, Inc. v. E.I. Du Pont De*

*Nemours and Company,* 9 F.Supp.2d 952, 954 (N.D.Ill.1998) (same).

■ Plaintiffs' claim for breach of fiduciary duty clearly meets these standards. It is undisputed that plaintiffs engaged the defendants to conduct mortgage brokerage services and a fiduciary duty was thereby created. Plaintiffs allege that defendants breached this duty by failing to perform this service. Contrary to defendants' assertions, the fact that plaintiffs ultimately obtained a mortgage is completely irrelevant to the motion to dismiss because we accept as true plaintiffs' claim that Dolphin and Datro were hired to comparatively shop for the mortgage and that they did not do so. Moreover, the 8% fee would clearly be excessive if in fact defendants did not perform as promised.

## E. *Truth in Lending Act*

In count V, plaintiffs allege that Beneficial Construction violated the Truth in Lending Act and Regulation Z by failing to provide plaintiffs with the regulation's required disclosures, including (1) the annual percentage rate of the financed portion of the transaction; (2) the "finance charge" appropriately labeled and described; (3) the "total sale price," including the price of the improvements and the cost of credit; and (4) the dates on which the "payments are due" (cplt. at 35–37). Plaintiffs further contend that the construction contract's 50% cancellation charge is an oppressive termination penalty and that the confession of judgment provision, which plaintiffs claim waives the consumer's defenses and right to legal redress, is unenforceable and illegal (cplt. at 38). Beneficial moves to dismiss this count on the grounds that its contractual arrangement with plaintiff is not covered by TILA because Beneficial is not a creditor as defined by that statute (Beneficial mem. at 5–6). The disclosures to which plaintiffs claim they were entitled under TILA are set forth at 12 C.F.R. §§ 226.17–.18. That section provides:

A creditor is defined in the text of the statute as:

[A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f). Section 105 of TILA empowered the Federal Reserve Board to create regulations to carry out the purposes of the Act pursuant to which the Board promulgated a comprehensive set of rules and regulations often referred to as Regulation Z (codified at Title 12, Part 226 of the Code of Federal Regulations). 16 U.S.C. § 1604. Regulation Z elaborates on the definition of a "creditor," providing:

A person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a down payment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.

12 C.F.R. § 226.2(a)(17)(i). The footnote to this section defines a "person who regularly extends consumer credit" as anyone who has extended credit more than five times in transactions secured by a dwelling in the previous calendar year. 12 C.F.R. § 226.2(a)(17)(i), fn 3. Note that although originally TILA's definition of a creditor also included any person who regularly "arrange[d] for the extension of credit," *see* 15 U.S.C. § 1602(f) (1981), in 1982 Congress deleted the "arrange" clause, substituting instead part (2) of the present subsection (f) (above).

■ In determining whether a party falls within TILA's definition of a creditor, courts first look to see whether the allega-

tions in the complaint meet the two-prong definition explicitly contained in the statute. *See, e.g., Moore v. Flagstar Bank,* 6 F.Supp.2d 496, 500–01 (E.D.Va.1997) (plaintiffs failed to allege that mortgage service provider was a creditor, or regularly extended credit, or was the payee on plaintiffs' debt and consequently failed to state a claim under TILA). Courts may also consider whether the defendant presented itself as a creditor, *see Noel v. Fleet Finance, Inc.,* 971 F.Supp. 1102, 1109 (E.D.Mich.1997), what party is identified as the lender on the documents, *King v. Second City Construction Co.,* 1997 WL 627649, *3 (N.D.Ill.1997), whether the defendant charged any sort of financing fee for its role in the transaction, *id.,* and, if the transaction involved the construction, sale or improvement of real property, whether the defendant took a security interest in the property at issue, *see Clay v. Johnson,* 22 F.Supp.2d 832, 836 (N.D.Ill. 1998).

■ We find that the allegations here are insufficient to place Beneficial within TILA's definition of creditor. Plaintiff does not allege that Beneficial is a creditor, or that it regularly extends consumer credit, and all evidence indicates that Guaranty Bank and GB Home Equity were the parties entitled to payment. The construction contract signed by both the DeLeons and a representative of Beneficial states that the DeLeons would make a $1,000 down-payment, and the remaining balance of $21,000 would be financed. The contract neither states a financing fee nor makes any reference to Guaranty Bank or GB Home Equity, the interest rate or duration of the financing, or any other finance-related terms, except the abbreviated statement "Finance approx. 321 per month, 21,000" (cplt., exh. A). There is no evidence or allegation that Beneficial took a security interest in the property, and apparently the only check that the

DeLeons wrote to Beneficial was for the down-payment (*id.,* exh. B). The promissory note makes no reference to Beneficial Construction (id., exh. D), but merely provides that the lender is Guaranty Bank/GB Home Equity, attached to which is a disclosure statement that appears to fully comply with TILA's requirements (id., exh. E). In short, there is simply no evidence that Beneficial was a creditor in this transaction or in any other. At most, plaintiffs allege that Beneficial Construction arranged the financing of their home improvements by referring them to a mortgage broker who then located a lender for the project.[9] Unfortunately for plaintiffs, however, "arrangers of credit" are no longer subject to the disclosure requirements of TILA. *See King v. Second City Construction Co.,* 1997 WL 627649, *3 (N.D.Ill.1997) (by affirmatively alleging that the defendant only arranged financing for its customers, and that the financing was actually provided by another party, plaintiffs had plead themselves out of a TILA claim against defendant). For the reasons stated above, plaintiffs' claim is dismissed with prejudice.

### F. The Illinois Consumer Fraud Act

In count VI, plaintiffs allege that Beneficial Construction and Zachary also violated section 2 of the Illinois Consumer Fraud Act, 8125 ILCS 505/2, by concealing the annual percentage rate involved in plaintiff's transactions, by telling plaintiffs that they would pay no interest when that was not the case, and by including coercive and unconscionable credit provisions in this consumer transaction, such as the 50% penalty clause for prematurely terminating or canceling the contract. Defendants argue that because defendants' failure to disclose this information is not actionable under TILA, it cannot serve as the basis of an ICFA claim. We agree.

---

**9.** Even this interpretation is a stretch, because this allegation is contained in Count III, ¶ 59(a), which is·not incorporated by reference into plaintiffs' TILA claim. *But see* Complaint ¶ 19.

830

ICFA prohibits any unfair or deceptive act, including the misrepresentation or concealment of any material fact, in the conduct of trade or commerce. 815 ILCS § 505/2. It is well established, however, that a claim not actionable under TILA will not be heard under ICFA. *See Greisz v. Household Bank (Illinois),* 8 F.Supp.2d 1031, 1042 (N.D.Ill.1998); *Agpawa v. Peter Levin Pontiac, Inc. and General Motors Acceptance Corporation,* 1998 WL 677160, *2 (N.D.Ill.Sept. 22, 1998); *Cleveland v. Wallace Auto Sales, Inc.,* 1998 WL 142357, *4 (N.D.Ill.March 20, 1098.).

Here, because Beneficial Construction and Zachary do not fall within TILA's definition of "creditors," they are not responsible for making the disclosures required under that statute. As a result, they cannot be held responsible for failing to disclose such information under ICFA. In fact, there is no reason to believe that the defendants even possessed the information to which plaintiffs claim they were entitled. Beneficial was not the project's lender and does not appear to have been connected to the financing except to the extent that it referred plaintiffs to a mortgage broker. Although the contract indicates that Beneficial tried to estimate what plaintiffs' monthly payment would be once financing was obtained, there is no indication that Beneficial knew at the time the contract was signed what the interest rate or other terms would be.

The defendants make no argument with respect to plaintiffs' claim that the 50% penalty clause for premature termination is unconscionable. This claim does not fall within ICFA because there is no allegation that this clause was concealed, misrepresented or otherwise fraudulently imposed on plaintiffs. In the absence of any further argument, then, we find that these allegations fail to state a consumer fraud claim.

For these reasons, defendants' motion to dismiss count VI is granted.

## CONCLUSION

For the reasons stated above, we grant defendants' motion to dismiss counts III, V, VI, with leave to amend count III within 20 days, and deny on counts I, II, IV.